[No. S127754. June 28, 2007.]

In re SAM HENRY LARGE on Habeas Corpus.

COUNSEL

David P. Lampkin, under appointment by the Supreme Court, for Petitioner Sam Henry Large.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Respondent State of California.

OPINION

**WERDEGAR, J.**—Petitioner in this habeas corpus proceeding is serving a life sentence under the "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12.)[1] He alleges he has been denied his "right to the exercise of the trial court's discretion to dismiss one or more of [his] strike

---

[1] All further references to statutes are to the Penal Code, except as noted.

prior convictions." (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530 [53 Cal.Rptr.2d 789, 917 P.2d 628] *(Romero)*.) On this basis, petitioner claims his sentence violates the due process clauses of the United States and California Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) Finally to resolve the matter, which has now generated four decisions by the Court of Appeal and three postappeal hearings in the superior court, we granted the petition and issued an order to show cause returnable before ourselves. We conclude petitioner has not shown that he is entitled to relief and therefore discharge the order to show cause.

## I. BACKGROUND

On April 4, 1995, the District Attorney of Riverside County charged petitioner by information with petty theft with a prior (§ 666), a felony, and falsely identifying himself to a police officer (§ 148.9, subd. (a)), a misdemeanor. Also alleged was that petitioner had suffered two prior felony convictions making him eligible for sentencing under the Three Strikes law, namely, first degree burglary (§ 459; see § 460, subd. (a)) and forcible lewd and lascivious conduct (§ 288, subd. (b)). Finally, the district attorney alleged petitioner was eligible for four one-year sentence enhancements (§ 667.5, subd. (b)) because he had served four prior prison terms for felonies and had not, following any of those terms, remained free of prison custody for the ensuing five years. The felony convictions underlying those prior prison terms were convictions for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)), as well as the burglary and lewd conduct convictions already mentioned.

On August 24, 1995, a jury found petitioner guilty of the charged offenses. The court subsequently found the sentencing allegations true.

Sentencing took place on October 13, 1995. Petitioner's counsel asked the court to exercise its discretion to reduce the current conviction of petty theft to a misdemeanor (see § 17, subd. (b)) and to strike one or more of the prior felony conviction findings that brought petitioner within the Three Strikes law (see § 1385, subd. (a)). The evidence concerning petitioner's criminal record that was before the court at the sentencing hearing, including the probation report and the records of prior convictions, showed the following:

On February 2, 1978, petitioner was convicted of possessing a hypodermic needle, a misdemeanor. (Bus. & Prof. Code, former § 4143, subd. (a), as amended by Stats. 1972, ch. 883, § 1, p. 1561.) He received probation for this offense.

On October 16, 1980, petitioner was convicted of forcible lewd and lascivious conduct with a 12-year-old girl. The record shows that defendant drove with the victim at night to a remote, isolated cotton gin (processing plant) where he worked and to which he had the key, used force against her to accomplish intercourse and oral copulation, and threatened to harm her if she did not comply. He received a five-year prison term for this offense.

On June 8, 1984, petitioner was convicted of first degree burglary and assault with a deadly weapon other than a firearm. The evidence shows that petitioner and an accomplice took a lawnmower from the open garage of an occupied residence and then fled at high speed in a car; when the owners gave chase in another vehicle, eventually cornering petitioner in a dead-end street, petitioner made a U-turn and rammed his pursuers. Petitioner received a seven-year sentence for these offenses.

On September 22, 1989, petitioner was convicted of petty theft with a prior, a felony. He received a 28-month prison term for this offense.

On April 29, 1991, petitioner was convicted of driving under the influence of alcohol (Veh. Code, § 23152, subd. (b)) and driving with a revoked or suspended license (id., § 14601.1), both misdemeanors. For these offenses petitioner received a fine and was required to participate in a driver improvement program.

On February 24, 1993, petitioner was convicted of possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)), a felony. He received a 16-month prison term for this offense.

On October 13, 1995, at the sentencing hearing in the instant case, petitioner stood newly convicted of petty theft with a prior (§ 666) and falsely identifying himself to a police officer (§ 148.9, subd. (a)). The evidence showed, briefly, that petitioner had entered a JCPenney department store, taken an $18 fanny pack and concealed it underneath his shirt, and left the building without paying. Store security personnel, who had videotaped petitioner's conduct on a surveillance camera, immediately detained him. When the police arrived, petitioner, who was on parole, falsely identified himself as his brother.

Other information before the court showed that petitioner, who had been paroled from state prison on November 16, 1993, had in the meantime suffered two parole revocations. His parole was revoked on January 13, 1994, for using methamphetamine, possessing Valium, failing to register as a sex

offender (§ 290), and failing to register as a controlled substance offender (Health & Saf. Code, § 11590). After being released on February 13, 1994, his parole was again revoked for using methamphetamine on March 22, 1994. After being released on August 3, 1994, petitioner failed to contact his parole agent and was reported as a parolee at large. Petitioner's whereabouts remained unknown to authorities until he was arrested for the current offenses. Speaking on his own behalf at the sentencing hearing, petitioner attempted to minimize his culpability for the 1980 conviction for forcible lewd conduct[2] and denied any wrongdoing in connection with the 1984 convictions for assault and burglary.[3] Finally, petitioner acknowledged that he had a 20-year problem with addiction to methamphetamine.

Sentencing occurred eight months before we decided, in *Romero, supra,* 13 Cal.4th at pages 529–530, that trial courts in cases charged under the Three Strikes law may, in the exercise of their sound discretion, dismiss prior felony conviction allegations in furtherance of justice under section 1385, subdivision (a). At the sentencing hearing, the trial judge erroneously assumed he did not have the discretion to strike priors. Whether he might have exercised that discretion in petitioner's favor was unclear. On one hand, the judge lamented the Three Strikes law, describing it as "an abomination" and "not a good law." Addressing petitioner, the judge stated that he had "great, great trepidation about the penalty . . . which I must impose upon you. It does not fit the crime." The judge also stated his belief that petitioner "was overcharged" and "wish[ed] there would be greater discretion provided." Addressing the prosecutor, the judge said he "regret[ted] personally that your office has been so rigid" and had "hope[d] that perhaps you had been one that may have requested or influenced that one of the priors be stricken so that a lesser sentence be imposed." While these remarks suggested the judge might have exercised his discretion in petitioner's favor, other remarks suggested the opposite. For example, the judge described petitioner as "fit[ing] into [the] category" of career criminals the Three Strikes law was intended to incarcerate. The judge also declined to exercise his statutory discretion (§ 17, subd. (b)) to reduce petitioner's current conviction of petty theft to a misdemeanor, which would have permitted the judge to impose a sentence unaffected by the Three Strikes law. (See *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 976 [60 Cal.Rptr.2d 93, 928 P.2d 1171] [the Three Strikes law "left section 17(b) undisturbed"].)

---

[2] Petitioner stated: "She [the 12-year-old victim] was 13. But she was a promiscuous 13. She wasn't your run-of-the-average little girl. She was very promiscuous."

[3] Petitioner claimed he did not know that his passenger "was going to run into the garage and steal a lawn mower. I was on parole at the time." The victims, however, had contemporaneously reported to the police that petitioner and his accomplice had carried the lawnmower away from the garage together. Petitioner also denied that he rammed the victims' oncoming car, asserting instead, "I never left my lane. The guy came into my lane and hit me head on." On this point, too, the victims' report to the police contradicted petitioner's explanation.

In any event, the superior court declined to strike either of petitioner's prior felony conviction allegations and sentenced him to the term of 29 years to life, which represented the 25-year-to-life sentence mandated by the Three Strikes law for a third strike conviction (§§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii)) and 4 one-year enhancements for petitioner's four prior prison terms (§ 667.5, subd. (b)).

Petitioner appealed. While his appeal was pending, we filed our decision in *Romero, supra,* 13 Cal.4th 497. In that decision, which we described as "fully retroactive" (*id.,* at p. 530, fn. 13), we explained that "[a] defendant serving a sentence under the Three Strikes law . . . imposed by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385(a), may raise the issue on appeal, or, if relief on appeal is not longer available, may file a petition for habeas corpus to secure reconsideration of the sentence." (*Romero,* at p. 530, fn. 13.)

The Court of Appeal rejected petitioner's claim, concluding "the trial court did, indeed, exercise its discretion and chose not to dismiss the strikes." One justice, however, dissented from the majority's conclusion on this point, suggesting that, given the trial judge's ambiguous remarks, "the wiser course here would be to remand the matter to the trial court for resentencing." The Court of Appeal later modified its opinion to delete the conclusion that the superior court judge had exercised his discretion and to add the statement that "it would have been an abuse of discretion for the trial court to dismiss any of Large's strike priors."

Petitioner sought review of the Court of Appeal's decision in this court. We denied his petition for review "without prejudice to filing a petition for writ of habeas corpus in the sentencing court. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13.)"

On June 6, 1997, as our order denying review had contemplated, petitioner filed a petition for habeas corpus in the sentencing court. Petitioner alleged, as relevant here, that "[t]he judgment committing [him] to the custody of the [then-named] Department of Corrections[4] is unlawful in that the trial court mistakenly concluded it lacked judicial authority to strike prior convictions alleged under the three strikes law." As relief, petitioner asked the court to order a hearing for the purpose of exercising its discretion and resentencing.

[4] On May 5, 2005, the Department of Corrections became the Department of Corrections and Rehabilitation. (See Gov. Code, § 12838, subd. (a), added by Stats. 2005, ch. 10, § 6.)

On March 25, 1998, without issuing an order to show cause, giving notice to the parties, or conducting a hearing, the original trial judge granted the petition for writ of habeas corpus and dismissed the allegation that petitioner had previously been convicted of forcible lewd and lascivious conduct. The People immediately sought review of the superior court's decision by filing a petition for writ of mandate in the Court of Appeal. On October 26, 1998, holding that the superior court's ex parte ruling had deprived the People of their state constitutional right to due process (Cal. Const., art. I, § 29), the Court of Appeal directed the issuance of a peremptory writ in the first instance (see *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893]), ordering the superior court to vacate its order granting the petition and "to set a hearing with notice to the People." The peremptory writ of mandate issued on January 5, 1999.

On remand, the superior court did as the Court of Appeal had directed. On April 2, 1999, after receiving briefs from the parties, the original trial judge conducted a hearing on the petition. The People were represented by the deputy district attorney who had tried the case, and petitioner was present and represented both by his trial counsel and by the attorney who had filed the petition for habeas corpus. The court and counsel agreed that the court's discretionary decision whether to strike a prior conviction finding was governed by our then recent opinion in *People v. Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*), in which we articulated standards to govern the exercise of such discretion. The evidence before the court was the same evidence the same judge had considered at the original sentencing hearing. (See *ante*, at p. 541 et seq.) Petitioner's counsel argued his client fell outside the spirit of the Three Strikes law (see *Williams*, at p. 161) because, "[w]ith the exception of [his] 1980 conviction for committing a lewd act by force, his record is largely comprised of small theft and drug matters with no indication of the violence and harm which the public rightly fears. Petitioner is a petty criminal, a person no doubt meriting punishment in the present case but not the 25-years-to-life term called for under the Three Strikes Law." The district attorney, in contrast, disputed counsel's characterization of petitioner as nonviolent, pointing to the facts of his 1980 conviction for forcible lewd and lascivious conduct (see *ante*, at p. 542) and his 1984 conviction for assault with a deadly weapon (*ibid.*). The district attorney also emphasized petitioner's strong recidivist history, observing that he had reoffended soon after each of his four prior prison terms. Finally, the district attorney noted defendant's failure to follow parole rules, as evidenced by his failure to report, his failure to register as a sex offender, and his falsely identifying himself to police. At the conclusion of the hearing, the judge expressed his understanding that, while he would be

required "to set forth in [a] minute order [his] reasons" for striking a prior,[5] he did not believe he had "the concomitant obligation to do so in the event [he] determine[d] not to strike a strike."[6] Petitioner's counsel agreed. The judge took the matter under submission without intimating how he might rule.

A week after the hearing, the judge requested additional information about petitioner's record from the People. Nothing further occurred until six months later, on November 19, 1999, when the judge entered a minute order denying the petition for writ of habeas corpus. The order stated: "This Court proceeded under the assumption that failure to grant a petition for writ of habeas corpus constituted a denial. Accordingly, this order confirms the denial of the petition for writ of habeas corpus." Neither petitioner's counsel nor the district attorney received notice of this order, as the Court of Appeal subsequently noted.

At some point thereafter the original trial judge (i.e., the same judge who had originally sentenced petitioner, conducted the hearing on Apr. 2, 1999, and entered the order on Nov. 19, 1999, denying the petition for habeas corpus) retired. Nothing further happened in the case until July 31, 2001, when petitioner wrote a letter to the court inquiring about the case's status. Petitioner wrote: "No word has reached this petitioner regarding the court's resolution of this matter. To petitioner's knowledge, a decision is yet pending. [¶] Petitioner now requests an official statement on the status of his habeas petition and the disposition of his request for resentencing under *Romero*." A second judge replied to petitioner on August 13, 2001, that the original trial judge had retired and that he "did rule on your petition. The petition for writ of habeas corpus was denied." The second judge enclosed a copy of the November 19, 1999, order denying the petition. Petitioner wrote again on August 19, 2001, inquiring whether the original trial judge had denied the petition on procedural grounds or had decided not to strike a prior. Petitioner also wrote that he was "bewildered by [the November 19, 1999] order, which states that, 'This Court proceeded under the assumption that failure to grant a petition for writ of habeas corpus constituted a denial.' Petitioner may be laboring under a misapprehension, but his understanding is that a Superior Court must not only rule on a habeas petition but must give reasons for its denial." On August 31, 2001, the second judge wrote back that, "In view of your representation that you did not have a hearing, I am referring this matter to [the] Supervising Judge of the Criminal Division . . . ."

---

[5] On this point the judge was correct. (See § 1385, subd. (a) ["The reasons for the dismissal must be set forth in an order entered upon the minutes"]; *Williams, supra*, 17 Cal.4th 148, 161; *Romero, supra*, 13 Cal.4th 497, 531.)

[6] On this point, too, the judge was correct. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376 [14 Cal.Rptr.3d 880, 92 P.3d 369].)

In fact, petitioner had *not* represented that he had not had a hearing. Moreover, the record shows that petitioner had personally attended the hearing on April 2, 1999, represented by counsel. (See *ante*, at p. 545.) The second judge's misinterpretation of petitioner's letter is impossible in retrospect to explain. In any event, the superior court ordered a hearing and the original trial judge was called out of retirement to conduct it. The new hearing took place on November 30, 2001. In attendance were the original trial judge, petitioner, petitioner's trial counsel, and the same deputy district attorney who had tried the case and appeared at the earlier hearing on April 2, 1999. At the 2001 hearing, the court reviewed the same information that had been available at the 1999 hearing and took the matter under submission without intimating how he might rule. The record of the 2001 hearing gives no reason to believe the judge or either attorney was aware that the petition had already been denied.[7] Two months later, on December 19, 2001, the judge purported to strike petitioner's prior conviction for first degree burglary and to resentence him to the term of eight years and six months. The judge's statement of decision contains no reference to the prior order denying the petition.

The People appealed. On March 27, 2002, while the appeal was pending, petitioner was released from prison in view of the time he had already served.

On April 21, 2003, the Court of Appeal reversed. After reviewing the case's increasingly intricate procedural history, the court explained that the November 19, 1999, order denying the petition for habeas corpus remained in effect and that the subsequent order purporting to grant relief was void.

On September 25, 2003, after receiving the remittitur, the original trial judge conducted a further hearing. Petitioner attended, represented by new counsel, and a new deputy district attorney appeared for the People. After some debate about the hearing's purpose, the judge reinstated the original sentence imposed on October 13, 1995 (i.e., 29 years to life), and remanded petitioner to the custody of the Department of Corrections to serve the remainder of that sentence. During the hearing, the judge seemed to confuse the Court of Appeal's October 26, 1998, decision, which had vacated his first ruling on the petition for habeas corpus for failure to give notice to the People, with the Court of Appeal's more recent, April 21, 2003, decision, which had reversed his third (purported) ruling on the petition as void. On

---

[7] While petitioner had been informed of the denial by letter two months earlier (see *ante*, at p. 546), no one suggests he was somehow at fault for not volunteering that information at the 2001 hearing.

this point, the judge said: "My granting of the first petition for writ of habeas corpus was denied—was reversed, frankly, for failure to give notice. Yet, the Court in its opinion states that I had previously ruled upon it." Concerning the November 19, 1999, order denying the petition, the judge apologized for not giving notice and said, "I frankly don't have any recollection at all as to why that November 19 order came down."

On April 27, 2004, petitioner sought review of the superior court's order reinstating his original sentence by filing a petition for writ of habeas corpus in the Court of Appeal. Petitioner alleged he had "been denied his due process right to the exercise of the trial court's discretion to dismiss one or more of [his] strike prior convictions." He expressly did not contend "that the trial court's second, binding ruling is necessarily unsustainable as an exercise of discretion, although [he] disagrees with it . . . ." Instead, observing that the discretionary decision to strike a prior is governed by the principles set out in *Romero, supra,* 13 Cal.4th 497, and *Williams, supra,* 17 Cal.4th 148, petitioner argued that "the inconsistency of the court's rulings calls into question whether these principles were observed . . . ." As relief, petitioner asked the court to remand the case "for proper exercise of the trial court's discretion . . . ." Petitioner also appealed the superior court's ruling, with his counsel filing a so-called *Wende* brief (see *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]; *Anders v. California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396]) identifying no arguable issues for appeal and asking the Court of Appeal to review the record independently.

Addressing both the petition for habeas corpus and the appeal in a single opinion, the Court of Appeal denied the petition and affirmed the superior court's order reinstating the original sentence. Concerning the petition, the Court of Appeal explained that, "since the trial court never explained its reasons for denying [the] petition for writ of habeas corpus, which this court declared in *People v. Large* [Apr. 21, 2003, E031159] to be a valid order, we have no basis upon which to conclude that that ruling was not reached in the proper manner. Certainly it, and the trial court's order at issue here, although wrongly reasoned, is consistent with the conclusion this court reached in 1996 that 'it would have been an abuse of discretion for the trial court to dismiss [either] of [petitioner's] strike priors.' " Concerning the appeal, the court found no arguable issues.

Petitioner sought review of the Court of Appeal's decision by filing, on September 8, 2004, the instant petition for writ of habeas corpus in this court, reiterating the claims made below. After determining that petitioner's claim was not procedurally barred, we granted the writ and issued an order to show cause returnable before ourselves on the merits of the claim.

## II. Discussion

■ In issuing the order to show cause, we made " 'an implicit preliminary determination' " that "petitioner has carried his burden of allegation, that is, that he 'has made a sufficient prima facie statement of specific facts which, if established, entitle him to . . . relief . . . .' " (*In re Sassounian* (1995) 9 Cal.4th 535, 547 [37 Cal.Rptr.2d 446, 887 P.2d 527], quoting *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1].) "That determination, it must be emphasized, is truly 'preliminary': it is only initial and tentative, and not final and binding." (*In re Sassounian, supra*, at p. 547.) Petitioner bears the burden of proving, by a preponderance of the evidence, the facts on which his claim depends. (*Id.*, at p. 546.)

Petitioner's claim is quite narrow. He does not dispute the Court of Appeal's conclusion that the December 19, 2001, order purporting to strike a prior was void, and he acknowledges that the earlier order of November 19, 1999, declining to strike a prior is the operative ruling.[8] Neither does petitioner argue "that the trial court's second, binding ruling is necessarily unsustainable as an exercise of discretion, although [he] disagrees with it . . . ." Finally, petitioner acknowledges "that [the trial judge] was aware of his discretion [under *Romero, supra*, 13 Cal.4th 497] at the 1999 proceeding. In fact, he was aware of his discretion at all three proceedings. Petitioner's complaint is with the manner in which [the judge] exercised or attempted to exercise his discretion."

Precisely what petitioner *does* claim is that "the inconsistency of the trial court's rulings raises a reasonable probability that the operative ruling was not reached in a proper manner. After all, this is not a case in which there was any significant change in the relevant evidence, or in the respective positions of the parties, from one ruling to the next." "Petitioner concedes that three different judges might have reached the same results as here, namely, two

---

[8] Departing from the contentions in his petition, petitioner contended at oral argument that the November 19, 1999, order did not in fact dispose of his June 6, 1997, petition for habeas corpus. We do not find the new contention persuasive. The November 19, 1999, order stated: "This Court proceeded under the assumption that failure to grant a petition for writ of habeas corpus constituted a denial. Accordingly, this order confirms the denial of the petition for writ of habeas corpus." We cannot believe that the same trial judge who conducted the April 2, 1999, hearing on the petition and took the matter under submission would "*confirm*[] *the denial of the petition*" (italics added) unless he did intend to deny the petition. The judge's erroneous prior "assumption that failure to grant a petition . . . constituted a denial" may simply reflect the judge's and counsel's agreement at the hearing that the judge was not required to give reasons for declining to strike a prior. (See *ante*, at pp. 545–546.) In any event, by entering the 1999 minute order the judge apparently recognized his earlier assumption was invalid.

decisions to dismiss a strike and one decision not to dismiss a strike. But, when these are the results of decisions *by a single judge*, the inference is that there has been a breakdown in the judge's decisionmaking process, and, since it cannot be determined which decision or decisions were affected by the breakdown, petitioner should be granted a new hearing in which proper decisionmaking will be employed."

■ Petitioner describes his claim as arising under the due process clauses of the United States and California Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) In support of his claim, petitioner cites decisions holding that a convicted person is entitled to be sentenced by a judge who is aware of the scope of his or her discretion and has accurate information about the defendant's criminal record. (*United States v. Tucker* (1972) 404 U.S. 443, 446–447 [30 L.Ed.2d 592, 92 S.Ct. 589]; *Townsend v. Burke* (1948) 334 U.S. 736, 740–741 [92 L.Ed. 1690, 68 S.Ct. 1252]; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].) Whatever the source of the right, we have repeatedly confirmed that a person subject to the Three Strikes law is entitled to a genuine exercise of sentencing discretion by the trial court (*People v. Rodriguez* (1998) 17 Cal.4th 253, 257 [70 Cal.Rptr.2d 334, 949 P.2d 31]; *People v. Fuhrman* (1997) 16 Cal.4th 930, 942 [67 Cal.Rptr.2d 1, 941 P.2d 1189]; *Romero, supra,* 13 Cal.4th 497, 530, fn. 13) and that the court's decision either way is subject to review for abuse of discretion (*People v. Carmony, supra,* 33 Cal.4th 367, 375; *Williams, supra,* 17 Cal.4th 148, 162). We may thus safely take for granted that a discretionary sentencing decision rendered by a judge who did not understand what he was doing would not be sustainable as a proper exercise of discretion.

We see in the record, however, no justification for challenging on this basis the operative order of November 19, 1999, denying the petition for habeas corpus.

■ Petitioner does not argue that the trial judge's failure to give reasons for declining to strike one of his prior convictions invalidates the November 19, 1999, order. Nor could he so argue. While a court must explain its reasons for striking a prior (§ 1385, subd. (a); see *Romero, supra,* 13 Cal.4th 497, 531), no similar requirement applies when a court declines to strike a prior (*People v. Carmony, supra,* 33 Cal.4th 367, 376). "The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law." (*Ibid.*) "Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id.,* at

p. 378.) The November 19, 1999, order's silence was also consistent with the court's and counsel's express recognition at the April 2, 1999, hearing that the court had no obligation to explain in the minutes a decision not to strike a prior.

Given that petitioner does not challenge the operative order as void, he finds himself in the difficult position of having to rebut the "strong presumption" (*People v. Carmony, supra,* 33 Cal.4th 367, 378) that the trial judge properly exercised his discretion in refusing to strike a prior conviction allegation. We do not believe he has rebutted the presumption.

Petitioner does not argue the trial judge declined to strike a prior in 1999 because he thought he was precluded from doing so by the Court of Appeal's earlier statement that to strike would constitute an abuse of discretion. We, in the meantime, had given petitioner express permission to file a petition for writ of habeas corpus in the sentencing court seeking relief under *Romero, supra,* 13 Cal.4th 497. In any event, petitioner specifically "agrees that [the judge] was aware of his discretion at the 1999 proceeding" that preceded the operative order. Moreover, in the 1999 hearing, the deputy district attorney did not argue the Court of Appeal's opinion precluded the judge from striking a prior, and the judge said nothing to indicate he thought he was precluded. Finally, as the judge took the matter under submission, he expressly held out the possibility of a decision either way.

Petitioner does argue that the inconsistency between the superior court's three orders, first striking a prior ex parte (Mar. 25, 1998), then refusing to strike a prior (Nov. 19, 1999), and finally purporting to strike a prior once again (Dec. 19, 2001), gives rise to "the inference . . . that there has been a breakdown in the judge's decisionmaking process . . . ."[9] While we accept for the sake of argument that inconsistent orders might under some circumstances support such an inference, we do not believe they support the inference in this case.

The superior court's first order striking a prior (Mar. 25, 1998) was properly reversed because the court violated the People's right to due process by not giving them notice or the opportunity to be heard. (See Cal. Const., art. I, § 29 ["In a criminal case, the people of the State of California have the right to due process of law . . . ."].) Due process required those things at the least. (Cf. *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 70 S.Ct. 652] ["Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no

---

[9] Petitioner does not allege or argue that the judge suffered, or suffers, from any mental infirmity.

doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case"].) The very purpose of giving the parties notice and the opportunity to be heard is to give them a chance to present information that may affect the decision. That the superior court would reach a different decision in 1999 after hearing from the parties in person and reviewing petitioner's criminal record in detail is not surprising. We thus do not find that the ex parte order of March 25, 1998, logically casts doubt on the regularity or correctness of the subsequent order of November 19, 1999, that followed a hearing of unquestioned procedural validity.

Having eliminated these possible challenges to the operative 1999 order, petitioner's claim must succeed or fail on the proposition that the substance of the void 2001 order casts doubt on the regularity of the 1999 order. Petitioner's argument seems to be that the same judge who decided to strike a prior in 2001, for the reasons he gave in the accompanying statement of decision, could not properly have reached the opposite decision in 1999. We do not believe the 2001 statement of decision has this much persuasive force.

■ The judge's 1999 decision refusing to strike a prior constituted a reasonable exercise of discretion under the standards we set out in *Williams*, *supra*, 17 Cal.4th 148, 159–161. There, we held that a court in exercising its discretion under the Three Strikes law "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (17 Cal.4th at p. 161.) Petitioner's record includes two offenses that the law defines both as serious and violent, one involving forcible lewd conduct with a 12-year-old girl (§§ 667.5, subd. (c)(6), 1192.7, subd. (c)(6)) and the other a first degree burglary from an occupied residence (§§ 667.5, subd. (c)(21), 1170.12, subd. (c)(18)). Petitioner's record also includes an assault with a deadly weapon, an offense that, while not formally defined either as serious or violent (cf. §§ 667.5, subd. (c), 1192.7, subd. (c)), in fact entailed a vehicular assault upon the victims of a burglary who were attempting to recover their stolen property. While petitioner's more recent offenses were far less serious, each represented a return to crime after a recent release from prison. Petitioner's most recent history, which includes committing a crime while on parole, falsely identifying himself to police, failing to register as a sex offender, and failing to report to his parole agent, suggests either an inability or unwillingness to follow the law and does not reflect well on his prospects. These facts adequately justified the judge's 1999 decision not to strike a prior.

To be sure, the judge in 2001 took a very different view of petitioner. In the statement of decision explaining his purported decision to strike a prior, the judge wrote, "[t]he court has always believed that [petitioner] is not a violent person or someone who is a danger to someone's physical safety." In this connection, the judge discounted petitioner's 1984 convictions for burglary and assault with a deadly weapon, stating that the burglary was "not in the residential part of the home" and that petitioner "insists the car he was driving merely crashed as a result of negligence." The judge also discounted petitioner's parole and sex offender registration violations, observing that "six out of eight times" petitioner had complied with those laws. Concerning petitioner's background, character and prospects, the judge stated that "[t]he root cause of all of [petitioner's] problems is drug related" and that, "[o]ver time, [petitioner's] crimes have diminished, not increased, in severity." The judge also recalled the testimony of character witnesses at the 1995 preliminary hearing, who had described petitioner as not violent and as wanting to enter a drug rehabilitation program. Finally, the judge mentioned petitioner's training and job prospects as a roofer, and his connection with relatives, specifically an ailing brother who needed assistance and "grandchildren with whom [petitioner] wishes to establish a relationship . . . ." Viewing petitioner in this way, the judge concluded that petitioner's "actions have appeared to change over time" and that the "prospects are good that he will not reoffend." Thus "[w]eighing the factors of aggravation, mitigation, and [petitioner's] background and character," the court determined that petitioner fell "outside the Three Strikes scheme."

■ The question before us is not whether the judge's purported decision in 2001 to strike a prior would have constituted an abuse of discretion. (See generally *People v. Carmony, supra,* 33 Cal.4th 367, 378.) Instead, the question is whether the void 2001 decision casts doubt on the judge's operative 1999 decision not to strike a prior. We do not believe it does. The concept of discretion implies that, at least in some cases, a decision may properly go either way. (E.g., *Ross v. Ross* (1941) 48 Cal.App.2d 72, 76 [119 P.2d 444] ["there are cases in which an order either way will be sustained on the ground that no abuse of discretion appears"].) ■ Here, a judge called out of retirement to rehear a discretionary sentencing decision six years after trial and two years after the last, forgotten ruling, reached a different decision than before. This, standing by itself without any indication the judge in making the operative ruling misunderstood the scope of his discretion or the relevant facts, does not demonstrate the ruling was invalid. We therefore conclude petitioner has not carried his burden of proving facts establishing his claim that he was denied his "right to the exercise of the trial court's discretion to dismiss one or more of [his] strike prior convictions."

### III.   Disposition

The order to show cause is discharged.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.