Filed 4/29/15  P. v. Estep CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040500 |
| | (Santa Clara County |
| Plaintiff and Respondent, | Super. Ct. No. C1224893) |
| v. | |
| LARRY ESTEP, | |
| Defendant and Appellant. | |

Defendant Larry Estep entered a plea of no contest to 19 counts of using personal identifying information without authorization (Pen. Code, §530.5, subd. (a)).[1]  He also admitted allegations that he had suffered two prior serious or violent felony convictions, i.e., strikes (§§ 667, subd. (b), 1170.12, subd. (c)(1)).  Defendant thereafter brought a motion—opposed by the People—requesting that the court exercise its discretion to dismiss the prior strike allegations in accordance with *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).  The court denied the *Romero* motion and sentenced defendant to a prison term of five years, four months.

On appeal, defendant argues that the denial of his *Romero* motion constituted an abuse of discretion because the court failed to give adequate consideration to, among

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

other things, the remoteness of the strike offenses; his prior prosecution, conviction, and incarceration in other counties for similar offenses that arose out of the same criminal scheme; his active participation in a treatment program; and his prospects of future employment. We find no merit to defendant's arguments and will affirm the judgment.

FACTS[2]

THE CURRENT OFFENSES

On January 11, 2011, the Milpitas Police Department received a Ripon Police Department report that there had been fraudulent charges made at a Milpitas Home Depot. The fraudulent charges were made to a BABS Concrete business account. The owner of BABS Concrete reported to the Milpitas police that he had learned from Home Depot, after his credit card had been declined, that his business address had been changed and someone had ordered additional credit cards for his business account. There had been a charge of $573.98 at the Milpitas Home Depot on the account that had not been authorized. A store investigator identified defendant through surveillance videos as the person having made the fraudulent purchase.

On March 28, 2011, a second victim (San José Plumbing) reported to San José police that fraudulent purchases totaling $30,891.12 had been made using her business account. Approximately four months earlier, the victim had received two new Home Depot credit cards containing her business information and account number, but with defendant's name on the card. Home Depot told her they would remove the cards from her business account. Several months later, the victim contacted Home Depot and learned that defendant had changed her business address for the account. She received a bill from Home Depot that reflected unauthorized purchases of $30,891.12 made at several Home Depot stores in the San Francisco Bay Area.

_____

[2] Our summaries of the facts concerning the current offenses and the strike priors are taken from the report of the probation officer.

Defendant was arrested on June 8, 2011, at an Emeryville Home Depot. Several weeks later, detectives met with defendant at the Alameda County Jail. "[D]efendant spontaneously started talking about how big the case was. He stated his 'main man' provide[d] him with credit cards and [told] him to make the purchases." Defendant said he would follow the instructions and sell the items purchased with the credit cards. Defendant specifically recalled the purchase involving the BABS Concrete account.

THE PRIOR STRIKES

Defendant had previously been convicted of two violent or serious felonies. Both are discussed below.

I.      *The First Strike Prior*

On November 16, 1993, defendant was convicted of second degree robbery (§§ 211/212.5), a strike (§§ 667, subd. (b), 1170.12). Together with the second strike prior (discussed below) he was sentenced to 15 years in prison.

The charged crime arose out of an incident occurring at an Oakland automobile repair shop on the morning of August 22, 1993. Defendant had drawn a .25-caliber handgun and had pressed it against a worker's ribcage. He ordered the worker and his coworker—the worker's brother—"to walk or he would shoot them." He later pressed the gun against the temples of the two workers and threatened to shoot them. Defendant's accomplice took $180 out of the cash register.

II.     *The Second Strike Prior*

On November 16, 1993, defendant was convicted of second degree robbery (§§ 211/212.5), a strike (§§ 667, subd. (b), 1170.12). The charged crime arose out of an incident occurring in Berkeley on the evening of August 30, 1993. Defendant and an accomplice approached a woman at a movie theater box office. Defendant grabbed her by the neck, pressed a gun against her ribs, and demanded money. The victim gave money to defendant, and he and his accomplice fled the scene.

PROCEDURAL BACKGROUND

Defendant was charged in a consolidated felony complaint filed May 9, 2013, with 19 felony counts of using personal identifying information without authorization (§§ 459-460, subd. (a); count 1, and counts 3 through 20), and one felony count of theft by use of an altered, stolen, or counterfeit access card (§§ 484g, subd. (a)-487; count 2). (Count 1 related to the fraudulent purchase on September 26, 2010, involving BABS Concrete. Counts 3 through 20 related to fraudulent purchases involving San José Plumbing on three successive days in December 2010—13 of which occurred in four different counties on December 11, one occurred on December 12, and four occurred in three different counties on December 13.) It was alleged that defendant had suffered two prior strikes (§§ 667, subd. (b), 1170.12, subd. (c)(1)). The complaint was later amended to dismiss count 2 and to renumber counts 3 through 20 as counts 2 through 19. On May 20, 2013, defendant pleaded no contest to the 19 counts and admitted the two strike prior allegations with the understanding that he would receive a maximum sentence of five years, four months.

Defendant thereafter filed a motion to have the court exercise its discretion to strike the two prior strike allegations in accordance with *Romero*, *supra*, 13 Cal.4th 497. The People opposed defendant's *Romero* motion. After hearing argument on November 22, 2013, the court denied defendant's motion. The court imposed a sentence of five years, four months, based upon a lower term sentence of 32 months for the count 1 conviction pursuant to the Three Strikes law, and consecutive prison terms of 16 months each for the count 2 and count 3 convictions, and a 32-month concurrent prison terms each for counts 4 through 19. In imposing this sentence, the court rejected the recommendation of the Probation Department that defendant receive an aggregate sentence of 26 years, eight months based upon running the sentences for each of the 19 counts consecutively. The court also ordered defendant to pay victim restitution to Home Depot in the amount of $22,600.20.

DISCUSSION

## I.     *Denial of* Romero *Motion*

### A.     Applicable Law

The California Supreme Court held in *Romero* that the trial court, on its own motion, is empowered under section 1385, subdivision (a) to dismiss or strike prior felony conviction allegations in cases that are brought under the law known as the "Three Strikes" law.  (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.)  The court's discretion, however, is limited to instances in which dismissing such strikes is in the furtherance of justice, as determined by giving " ' "consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People . . . .*" ' " (*Id.* at p. 530, original italics.)  Thus, the court may not strike a sentencing allegation "solely 'to accommodate judicial convenience or because of court congestion[' citation, or] simply because a defendant pleads guilty.  [Citation.]  Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his [or her] present offenses,' and other 'individualized considerations.'  [Citation.]" (*Id.* at p. 531.)

The Supreme Court later explained "the 'concept' of 'furtherance of justice' within the meaning of Penal Code section 1385[, subdivision] (a)[, which *Romero* had recognized as being] ' "amorphous." ' [Citation.]" (*People v. Williams* (1998) 17 Cal.4th 148, 159 (*Williams*).)  It noted that in deciding whether to dismiss a strike " 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)  The sentence to be meted

5

out to the defendant "is also a relevant consideration . . . in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (*People v. Garcia* (1999) 20 Cal.4th 490, 500 (*Garcia*).)

If the court strikes or dismisses one or more prior conviction allegations, its reasons for doing so must be stated in an order entered on the minutes. (*Ibid.*) Conversely, the trial court has no obligation to set forth its reasons for deciding *not to* strike or dismiss prior strikes. (*In re Large* (2007) 41 Cal.4th 538, 546, fn. 6; see also *In re Coley* (2012) 55 Cal.4th 524, 560.) As our high court has explained: "The absence of such a requirement [that the court set forth its reasons for refusing to dismiss a strike] merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law." (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

The granting of a *Romero* motion is "subject to review for abuse of discretion. This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]" (*Williams*, *supra*, 17 Cal.4th at p. 162; see also *Garcia*, *supra*, 20 Cal.4th at p. 503.) This abuse of discretion standard also applies to appellate review of the denial of *Romero* motions. (*Carmony*, *supra*, 33 Cal.4th at pp. 374-376; see also *id.* at p. 375: " 'Discretion is the power to make the decision, one way or the other.' ") It is the defendant's burden as the party attacking the sentencing decision to show that it was arbitrary or irrational, and, absent such showing, there is a presumption that the court " ' "acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]" (*Id.* at p. 377.) Such a discretionary decision " ' "will not be reversed merely because reasonable people might disagree." ' " (*Ibid.*)

6

Placing in context the circumstances under which a court properly exercises its discretion in granting a *Romero* motion, the California Supreme Court has explained: "[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he [or she] squarely falls once he [or she] commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

B.     Defendant's *Romero* Motion

Defendant argued below that the court should dismiss the prior strike allegations. He contended, among other things, that he was a low public safety risk; "the root of [his] criminality ha[d] been his untreated substance abuse issues"; he had in place a strong substance abuse rehabilitation plan that would include residential treatment program sponsored by the Department of Veterans Affairs (VA); he had significant job skills that provided him with good prospects for employment; while in custody, he had actively participated in substance abuse courses; the strike offenses were remote in time; the current crimes were nonviolent, no one was injured, and "[n]o criminal sophistication was demonstrated"; he acknowledged responsibility for the current crimes; and he was 63 years old.

The People opposed the motion, indicating there was "nothing to suggest that Defendant falls outside the spirit of the Three Strikes Law."  They argued that "[t]he current offenses demonstrate increased sophistication and planning as Defendant was an active participant of a large credit card fraud ring and [he] alone caused Home Depot to suffer losses of approximately $121,000."  The People stressed the violent nature of the two prior strike offenses, which involved defendant threatening at gunpoint three victims in order to rob them.  The People also emphasized defendant's criminal history and his poor performance on parole and probation.

After brief argument from defendant's counsel—in which counsel asked the court to consider that defendant had already been sentenced in out-of-county proceedings that involved offenses arising out of the same criminal scheme—the court denied defendant's *Romero* motion.

### C.    Discussion Regarding Denial of *Romero* Motion

Defendant makes three essential arguments in support of his claim that the court abused its discretion by failing to dismiss the two strike priors.  First, he argues the court failed to consider his record of rehabilitation, including letters of support submitted on his behalf.  Second, he contends the court failed to consider the "unique opportunities for employment" available to him upon his release from custody.  And third, in determining the length of time defendant would serve for the current offenses, he argues the court failed to consider the approximate two years defendant had served for out-of-county convictions relating to the same criminal scheme.

The court, in considering the *Romero* motion, was obliged to consider the three factors identified by the California Supreme Court in *Williams*, namely, "[1] the nature and circumstances of [defendant's] present felonies[, 2 the nature and circumstances of defendant's] prior serious and/or violent felony convictions, and [3] the particulars of [defendant's] background, character, and prospects . . . ."  (*Williams*, *supra*, 17 Cal.4th at p. 161.)  In making the three arguments in support of his appellate claim—each of which

8

we will address below—defendant effectively ignores the first two *Williams* factors, and omits any consideration of one important aspect of the third factor: defendant's criminal history.

### 1. *The Present Offenses*

Concerning the first factor—the nature and circumstances of the present felony offenses—defendant argued below that the 19 underlying felonies were nonviolent, and defendant was not armed during their commission. He asserted that "[h]e did not take advantage of a position of trust, and [he] acted without criminal sophistication . . . [Defendant was] not the initiator of the unlawful conduct, but rather was used as a pawn in a scheme developed by others far more criminally sophisticated than himself." He asserted that the crimes he had committed since the commission of the strike offenses, including the current crimes, were of decreasing severity. And, he argued, he took early responsibility for the crimes.

In assessing the current crimes, neither the absence of resulting physical harm to others nor the nonviolent nature of the crimes serves as a basis for the granting of a *Romero* motion. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 344 [reversing order granting *Romero* motion which was based in part on nonviolent nature of current offense; "the nonviolent or nonthreatening nature of the felony cannot alone take the crime outside the spirit of the law"]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 (*Gaston*) [although current crime of car theft "not as serious as many felonies," it was "far from trivial"].) Far from being a victimless crime, defendant made substantial unauthorized purchases involving two businesses, BABS Concrete and San José Plumbing. Although Home Depot absorbed the customers' respective financial losses, the owner of San José Plumbing reported that she was unable to have a business account with Home Depot because of defendant's conduct. Home Depot reported losses from the current offenses of $22,600.20. And the current offenses were part of a larger enterprise involving defendant and others that resulted in substantial additional fraudulent purchases from

9

Home Depot stores in several counties.[3]  Additionally, although defendant accepted responsibility for the present crimes, he sought to minimize his involvement in the criminal scheme, stating to the probation officer that "he was merely a 'mule running in and out of the stores.'  He was 'taking instructions from the main person'. . . [and was] disappointed in the justice system [because it was] treating him as a 'master mind' behind this plan."

### 2.     *The Prior Strikes*

Addressing the second *Williams* factor, the two prior strike offenses were second degree robbery.  Both offenses involved the personal use of a handgun by defendant.  In the August 22, 1993 robbery, defendant pressed the handgun against the ribcage of one worker, telling the worker and his brother that he would shoot them if they did not move; defendant later pressed the gun against the temples of both workers and threatened to shoot them.  In the August 30, 1993 robbery, defendant grabbed a woman by her neck and pressed a handgun against her ribs while demanding money.  The threat of physical harm and emotional trauma to the three victims cannot be minimized.  (See *People v. Hodgson* (2003) 111 Cal.App.4th 566, 580 [defendant "had to be aware use of a gun to effect the robbery presented a grave risk of death"].)[4]

It is true, as emphasized by defendant in his motion below, that the prior strikes involved crimes that were remote in time—occurring approximately 18 years before the

---

[3] Although the record on this issue is somewhat sparse, the probation officer noted that the investigator for Home Depot had reported that defendant had been involved in $121,000-worth of fraudulent purchases using business credit cards at various Home Depot stores.

[4] In the *Romero* motion, defendant's attorney claimed that "[t]he prior involved a robbery where [defendant] was the driver of the getaway car"; his codefendant was his brother; and "the weapons used in the robbery were in fact 'fake' guns."  These circumstances are not presented in, or otherwise corroborated by, the record, and it is uncertain whether counsel's statements are in reference to the Oakland robbery, the Berkeley robbery, or both 1993 robberies.

commission of the current offenses. But as we discuss, *post*, defendant did not live a crime-free life either before or after his commission of the strike offenses, and he was in prison for a majority of the time after 1993, serving his sentence for the strike offenses. Under these circumstances, the fact that the prior strike offenses were somewhat remote in time provides little or no support for defendant's position that he falls outside of the spirit of the Three Strikes law. (See *People v. Pearson* (2008) 165 Cal.App.4th 740, 749 [rejecting argument that prior strikes should have been dismissed because they were remote, because of violent nature of current crime, and because defendant had led a continuous life of crime and had performed poorly on probation and parole]; *Gaston*, *supra*, 74 Cal.App.4th at p. 321 [remoteness of prior strikes "not significant" in view of the defendant's lengthy criminal history].)

### 3. *Defendant's Background, Character, and Prospects*

#### a. Criminal Background

One aspect of a defendant's background that must be considered in evaluating the propriety of dismissing a strike prior is his or her criminal history. (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906 (*Philpot*) [noting defendant's "criminal history was extensive and serious" and he had "manifested a persistent inability to conform his conduct to the requirements of the law"]; *Gaston*, *supra*, 74 Cal.App.4th at p. 320 [finding abuse of discretion in dismissing strike prior; although strike was 17 years old, defendant had an "unrelenting record of recidivism"].) This aspect of defendant's background is demonstrably unfavorable to his position.

The record shows that, excluding the current offenses, defendant had been convicted of 12 felonies and four misdemeanors. His first misdemeanor conviction occurred in 1969, and his first felony conviction occurred 10 years later—a conviction for receiving stolen property (§ 496). In 1984, he was convicted of bank robbery for which he was sentenced to 15 years in federal prison, the execution of which was suspended. In 1986, he was again convicted of bank robbery and was sentenced to eight years in federal

11

prison. On November 16, 1993, defendant was sentenced to prison for 15 years in connection with the two Alameda County robbery convictions, i.e., the prior strikes. In November 2005, he was convicted in Alameda County of petty theft with a prior, a felony (§§ 484, subd. (a), 666), and was granted five years' probation with the condition that he serve one year in jail. In November 2009, he was convicted in Alameda County of grand theft (§ 487, subd. (a)); he received probation, but it was later terminated and he was sentenced to two years in prison. In August 2011, he was convicted in Alameda County of grand theft (§ 487, subd. (a)) and unlawful use of personal identifying information (§ 530.5, subd. (a)). He received probation for these offenses. In February 2013, he was convicted in Marin County of second degree burglary (§ 459, subd. (a)) and theft by use of an altered, stolen, or counterfeit access card (§ 484g). He received a 32-month prison sentence for these offenses. And in April 2013, he was convicted in Contra Costa County for theft by use of an altered, stolen, or counterfeit access card (§ 484g). He received probation for that offense.

### b. Substance Abuse History

Defendant attributed his criminality to the fact that, after his release from the United States Marine Corps due to a physical injury, he became addicted to heroin. He told the probation officer that he had had a substance abuse problem for more than 25 years. On appeal, counsel explains defendant's recidivism as follows: "After serving a 15-year sentence without the benefit of consistent substance abuse treatment, [defendant] returned to the streets without any support and quickly returned to a life of crime in order to support his heroin addiction."

Defendant requested that the court "acknowledge that the root of [defendant's] criminality has been his untreated substance abuse issues." He submitted a letter from the VA confirming his eligibility for a six-month residential treatment program focusing on recovery and employment for veterans. Additionally, he indicated that he had been actively participating in an in-custody treatment service, BACR, and submitted a letter

12

from BACR's lead counselor, James Sellers. Sellers stated that defendant had attended and graduated from each of the programs offered by BACR. Although Sellers qualified his opinions by stating that it was "impossible to predict a 'treatment outcome,' " he stated that defendant had "shown many of the signs of imminent change" and was "a very good subject for treatment."

Defendant argues the court failed to give adequate consideration to this aspect of his background, character, and prospects. Specifically, he argues that the court did not consider that his history of criminality was due to his untreated substance abuse issues, that his prospects were good because he had taken positive steps to treat the problem, and that he was eligible upon his release to participate in the VA's six-month residential treatment program. But the fact that defendant claimed his drug dependency was the cause of his criminal behavior did not furnish a basis for the granting of his *Romero* motion. Nor was the fact that defendant had successfully participated in treatment programs a reason, of itself, to warrant the dismissal of his prior strikes. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment," notwithstanding his having sought treatment after incarceration for the current offenses].) While defendant's willingness to commit to treatment to address his longstanding drug problem is commendable, neither it nor the prospective opportunity to participate in the VA program were matters that compelled the granting of the *Romero* motion.

### c.    Prospects

Defendant noted below that he had significant training and work history. As described in the motion filed by his counsel,[5] defendant had (1) vocational training in

---

[5] With two exceptions that are noted in the text, there is no verification found in the record of the facts presented by defendant's counsel in the *Romero* motion.

carpentry and business administration from a college in Oakland; (2) obtained experience "from the years he spent working with his various [u]ncles" in remodeling homes, including performing electrical, plumbing, roofing, painting, and carpentry work; (3) worked for eight years with DMC Bay Area "gaining extensive experience in clerical work and administrative support"; (4) worked as an assistant administrator for the Washington State Department of Social and Health Services; (5) worked for three years as a procurement supervisor for Butler Telecom Communications; and (6) gained "experience in automotive repair and mechanics, as a forklift operator, and as a machinist/machine operator." Defendant also noted (verified by an exhibit) that he would be eligible for priority service from the California Employment Development Department (EDD) to assist him in finding employment. And defendant, while incarcerated, took a lead role in a large painting project at the Marin County Jail. In a letter attached to the motion dated November 18, 2012, a deputy sheriff commended defendant's "exceptional work performance" on the project. Counsel asserted that defendant's work background and experience, potential opportunities upon his release, and his work while incarcerated indicated that he had realistic prospects of gainful employment.

In arguing that his prospects upon release were good, defendant ignores certain circumstances that are not as favorable to his position. Two significant ones, discussed *ante*, are defendant's history of criminality and substance abuse. In addition, as noted by the probation officer, defendant did not have a support network, "[felt] abandoned by his family," and was transient.

Defendant argues that the trial court, in assessing his background, character and prospects, disregarded his work experience, training, recent work at the Marin County Jail, and the possibility of his receiving EDD job assistance. While there is no evidence the court specifically considered these matters, there is also nothing suggesting that it did not. Nor was the trial court required to identify whether it considered this issue or any

14

other issue, the extent to which it deemed any issue important, or otherwise provide reasons for its denial of the *Romero* motion. (*In re Large*, *supra*, 41 Cal.4th at p. 546, fn. 6 [trial court need not specify reasons for denying *Romero* motion].)

### d. Punishment for Related Crimes

Defendant argues the trial court abused its discretion by not considering the sentence it imposed for the current offenses in the broader context of defendant's punishment for other crimes committed as part of the same criminal scheme. Defendant cites *Garcia*, *supra*, 20 Cal.4th 490 in support of his position. He argues: "Since 2011, [defendant] had been in custody for guilty pleas he entered in Marin, Contra Costa, and Alameda Counties for crimes arising from the same criminal scheme for which he was prosecuted in this case, involving the same victim, namely, Home Depot." He contends the People did not address this issue, and the trial court likewise failed to address his argument.

The record does not show that the court failed or refused to take into consideration defendant's incarceration in other counties for crimes committed as part of the same criminal scheme as the 19 felonies to which he pleaded no contest here. There is no evidence that the court either specifically considered, or did not consider, this matter. Since the court, in refusing to dismiss the strikes, was not required to specifically identify the issues it considered or its conclusions as to their importance, its failure to specifically note that it had considered defendant's incarceration in other counties for other offenses was not error. (*In re Large*, *supra*, 41 Cal.4th at p. 546, fn. 6.)

In *Garcia*, the defendant was found guilty of two burglary counts, and the court found true the allegation that defendant had sustained five prior strike convictions. (*Garcia*, *supra*, 20 Cal.4th at p. 493.) The court then denied the defendant's motion to dismiss four of the five strike allegations as to one count, but granted it as to a second count, and imposed a total sentence of 31 years, four months to life. (*Id.* at pp. 494-495.) The primary issue considered by the California Supreme Court in *Garcia* was whether

15

the trial court, in the exercise of its discretion, may dismiss strike allegations as to one count but not as to another. (*Id.* at pp. 492-493, 496, 499-502.)

After concluding the court had the discretion in an appropriate case "to dismiss prior conviction allegations on a count-by-count basis [citation]" (*Garcia*, *supra*, 20 Cal.4th at p. 502), the Supreme Court determined that the trial court had not abused its discretion by dismissing one of the strikes (*id.* at p. 503). In the course of addressing the primary issue in the case, the court observed: "[T]he Attorney General's argument proceeds from the false assumption that striking prior conviction allegations with respect to some, but not all, counts is proper only if the current offenses differ in some way from one another, or if they differ in their relationship to the prior convictions. But a defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.] A trial judge, applying the factors we enumerated in *Romero* and *Williams*, may find adequate justification for striking one or more prior conviction allegations, but may deem appropriate the sentence that results from striking the prior conviction allegations as to only some counts. When a proper basis exists for a court to strike prior conviction allegations as to at least one current conviction, the law does not require the court to treat other current convictions with perfect symmetry if symmetrical treatment would result in an unjust sentence." (*Id.* at p. 500.)

Defendant contends that "[t]he concerns addressed in *Garcia* are particularly relevant to the facts of the instant case. They reveal, in effect, that the trial court here was obligated to consider the *Williams* factors in the context of all the time served by [defendant] in other counties for crimes arising from the same criminal scheme." While under *Garcia*, *supra*, 20 Cal.4th at page 500, the trial court must consider, in determining whether to exercise its discretion to dismiss strike allegations, whether the sentence is otherwise unjust, the Supreme Court did not address the situation presented here:

16

defendant's having already served sentences for prior convictions in other counties arising out of the same general criminal scheme.  It cannot be concluded, therefore, that under *Garcia*, the trial court is required to consider such sentences.  In any event, there is nothing in the record to support defendant's conclusion that the trial court did *not* consider the fact that defendant had already received punishment in other counties for related crimes.  Nor is there anything showing the court did not, as required under *Garcia*, consider whether the sentence, absent a dismissal of the strikes, would be unjust. We presume the court knew and followed the law—including its considering the three factors enunciated in *Williams*, *supra*, 17 Cal.4th at page 161, and its assessing whether the sentence was otherwise unjust—in connection with determining whether to exercise its discretion to dismiss the strike allegations.  (See *People v. Coddington* (2000) 23 Cal.4th 529, 644, disapproved on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

### 4.	Trial Court's Stated Reasons

In connection with his assertion that the trial court failed to consider that defendant had been incarcerated for approximately two years for related crimes, defendant asserts the trial court's only stated reason for denying the *Romero* motion was its conclusion that, even if it were inclined to dismiss one of the strikes, the resulting sentence would be no different than had it dismissed neither strike.  He argues the court did not "provide any reason for why it was inclined to deny the *Romero* motion on one, rather than both, prior strikes," and the minutes provide no reason for the denial of the motion.  The reporter's transcript reflects the following comments by the trial judge: "With respect to the *Romero* motion, I'm not going to grant it.  And . . . one of the main reasons is . . . that even if I were to grant the *Romero* motion, I would only be granting it as to one of the priors, and Mr. Estep would end up with the same sentence as if even though I don't grant it [*sic*] . . ."

17

We understand from the trial judge's remarks that he did not feel that the circumstances justified his exercising his discretion to dismiss *both* strikes, and therefore, even if he were inclined to dismiss one strike, it would be of no consequence. Implicit in the judge's statement is that he weighed the relevant considerations and concluded that defendant did not fall outside the spirit of the Three Strikes law so as to warrant dismissal of both strikes. The failure of the trial judge either on the record or in the minutes to reflect his full reasoning on the matter does not justify reversal, since he was not required to enunciate his reasoning. (*In re Large*, *supra*, 41 Cal.4th at p. 546, fn. 6; cf. *Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 368-369 [court not obligated to state reasons for denial of motion for discovery by convicted felon in habeas corpus proceeding; decision will be affirmed unless appellant meets "burden of showing the trial court abused its discretion because [it] could have had *no* reasonable basis for its ruling"].) Further, to the extent defendant challenges the trial judge's decision based upon his statement that dismissal of one strike would be of no consequence, "we review the action of the lower court, not its reasons. [Citation.]" (*People v. Herrera* (2000) 83 Cal.App.4th 46, 65.)

### 5. *Conclusion*

Upon review of the first two *Williams* factors—which were not addressed by defendant in the appeal—the circumstances regarding both factors did not favor defendant's position that dismissal of the strike allegations was appropriate. As to the third factor—"the particulars of [defendant's] background, character, and prospects" (*Williams*, *supra*, 17 Cal.4th at p. 161)—while there were some favorable circumstances, they were not so compelling as to require dismissal of the strike priors. Significantly, defendant's recidivism demonstrated that he had not learned from his mistakes. (See *Williams*, at p. 163 [noting that multiple convictions prior to the present offense indicated that the defendant " 'had been taught, through the application of formal sanction, that

18

[such] criminal conduct was unacceptable—but had failed or refused to learn his lesson' "].)

Defendant's contention that the court abused its discretion in denying the *Romero* motion because it did not specifically consider defendant's punishment for related crimes, his work experience and skills, or his prospects of employment is also without merit. The court was not required to identify the issues it considered or otherwise provide its rationale for ultimately concluding that the *Romero* motion should be denied. (*In re Large*, *supra*, 41 Cal.4th at p. 546, fn. 6; see also *In re Coley*, *supra*, 55 Cal.4th at p. 560.) And we will not infer that the court failed to give adequate consideration to all relevant factors that were enunciated by our high court in *Williams*. Where the record concerning a *Romero* motion is silent, "the presumption that a trial court ordinarily is presumed to have correctly applied the law should be applicable." (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434; see also *Carmony*, *supra*, 33 Cal.4th at p. 378.)

The court—after giving due consideration to the specifics of the current offense, the nature of the prior strike offenses, and defendant's background character and prospects (including his criminal record)—properly concluded that defendant did not fall outside of the letter and spirit of the Three Strikes sentencing scheme. (See *Philpot*, *supra*, 122 Cal.App.4th at pp. 906-907 [court properly considered the defendant's history of continuously committing crimes for 20 years, his underlying drug addiction, and the prior and current offense as indicative of his poor future prospects and that, as "a flagrant recidivist," he was not outside the spirit of the Three Strikes law].) The circumstances presented by defendant here are not so " 'extraordinary' " as to fall outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Because the court's ruling did not " 'fall[] outside the bounds of reason' under the applicable law and the relevant facts [citation]" (*Williams*, *supra*, 17 Cal.4th at p. 162), the court did not abuse its discretion in denying defendant's *Romero* motion.

## DISPOSITION

The judgment is affirmed.

Márquez, J.

WE CONCUR:

Bamattre-Manoukian, Acting P. J.

Mihara, J.

People v. Estep
H040500