Filed 11/25/14  P. v. McNair CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>RONALD STEPHEN MCNAIR,<br><br>        Defendant and Appellant. | C075520<br><br>(Super. Ct. No. CRF132896) |

A jury found defendant Ronald Stephen McNair guilty of first degree burglary. (Pen. Code, §§ 459, 460, subd. (a); unless otherwise stated, statutory references that follow are to the Penal Code.)  The trial court found true a serious felony allegation (§ 667, subd. (a)(1)), a strike allegation (§§ 667, subds. (b)-(i), 1170.12), and three prior prison term allegations (§ 667.5, subd. (b)).  Defendant's request to dismiss the strike and prison term allegations for purposes of sentencing (§ 1385; *People v. Superior Court*

1

*(Romero)* (1996) 13 Cal.4th 497 (*Romero*)) was denied.  He was sentenced to prison for 11 years consisting of twice the low term of two years, five years for the prior serious felony, and two years for prior prison terms; the third prior prison term was stayed pursuant to section 654.

On appeal, defendant contends (1) the trial court erred when it admitted over his objection irrelevant and prejudicial evidence of a subsequent Placer County burglary, and (2) the court abused its discretion by denying his *Romero* request.  We affirm the judgment.

FACTS AND PROCEEDINGS

*Prosecution Case-in-Chief*

On June 16, 2013, defendant's acquaintance Matthew Boyle rented a cargo van in Rancho Cordova.  Boyle was supposed to return the van the next day but failed to do so.  On June 18, 2013, Boyle and defendant were recorded on surveillance video at a Sacramento pawn shop.  They had a cargo van similar in appearance to the rented van.  When the van was returned on July 1, 2013, the rear bumper bore stickers that concealed the rental company's serial number.  The van was dirty, its gas tank was empty, and a floor mat was missing.

Two days after the visit to the pawn shop -- June 20, 2013 -- a neighbor's surveillance system recorded two men in a cargo van entering the driveway of a single family residence in Davis.  The homeowners, Martin and Sandra Devault, were not present.  One man approached the front door with a clipboard and then returned to the van, evidently because the door had not been answered.  Thereafter both men entered the garage and, after 10 minutes, returned to the van.  The van left the scene and, after 39 minutes, returned to the house.  The men reentered, carried property to the van, and departed.  Mrs. Devault had not given anyone permission to enter her home that day.  Nothing in the record suggests that her husband had done so.

2

Mrs. Devault returned to the home around 4:30 p.m. and saw that one of the garage doors was open. After entering the garage, she noticed that the doors to the garage cupboards and the backyard were open. Mrs. Devault called the police and waited outside. Yolo County Sheriff's Detective Dean Nyland responded to the call.

Portions of the house were in disarray and appeared to have been ransacked. Several items were missing including cameras, computers, coins, drawers, a lockbox, prescription drugs, and silverware. One laptop computer held information on the Devaults' vacation home in Placer County. Four days after the Davis burglary, the Placer County home was burglarized.

After law enforcement left the residence, Mrs. Devault discovered a pair of sunglasses on the master bedroom floor that did not belong to her or her husband. A deputy sheriff collected the sunglasses. The California Department of Justice determined that a fingerprint found on the sunglasses belonged to defendant. Mrs. Devault did not know defendant, and nothing in the record suggests that Mr. Devault knew him.

More than a month after the Davis burglary, Detective Nyland arrested defendant in Roseville. After advising him of his constitutional rights, Detective Nyland told him that there had been a burglary in Yolo County and a subsequent burglary in Placer County. Defendant responded that he knew a lot of people "in the business" of committing burglaries and thefts and said he could assist officers in recovering the stolen property if they released him from custody.

Detective Nyland told defendant that he could not be released because his fingerprint had been found at the Davis residence and there had been video surveillance at the scene. After Detective Nyland suggested that defendant had left behind an object that bore his fingerprint, his disposition changed. His "face dropped, his eyes dropped, he shifted in his seat significantly. As opposed to just moving an inch or two, his whole body moved off the chair. He was visibly upset." Defendant asked to speak with counsel and questioning ceased.

On his way to jail, defendant again tried to negotiate his release, telling Detective Nyland that he could find some of the stolen property if he were released. Detective Nyland said he did not have the power to release defendant after he had been placed under arrest. Defendant said he knew the location of some of the stolen property and Detective Nyland persuaded him to direct Nyland to that location.

Defendant led Detective Nyland to Matthew Boyle's residence in Sacramento. Defendant said he was a friend of Boyle and had been at his residence "on and off," most recently that morning. Defendant said he had seen stolen property at the house during the morning visit.

The Devaults had given Detective Nyland 15 photographs they had taken for insurance purposes of property later lost in the Placer County burglary. Upon arrival at Boyle's residence, Detective Nyland asked defendant to describe some of the stolen property he had seen. As he did so Detective Nyland searched the photographs, found the described items, and showed defendant the photographs. Defendant confirmed that each described item was depicted in the corresponding photograph.

Based on defendant's information, the Placer County Sheriff's Department obtained a search warrant for Boyle's residence. Detective Nyland and a Placer County sheriff's strike team executed the warrant. Boyle's house resembled "a hoarder's house," in that property was scattered "helter skelter" throughout the residence. The search yielded many of the items that defendant had indicated would be there. Mrs. Devault was asked to come to the house to try to identify stolen items. She identified many items as property stolen from the Davis home and the Placer County vacation home. The Devaults had not given anyone permission to have their belongings. Mrs. Devault did not know Boyle, and nothing in the record suggests that Mr. Devault knew him.

Before defendant was brought back to the Yolo County Sheriff's Department, Detective Nyland showed him a photograph of a cargo van and defendant admitted that he had been in the van. When shown photographs of the Devault residence, defendant

4

said that he "believe[d]" he had been there and that he "might have been there in that area with Mr. Boyle."

The laptop computer stolen during the Davis burglary was later recovered. Following the theft, the Devaults installed a smartphone app that sent them messages whenever the stolen computers were connected to the internet. The laptop computer sent messages from three different locations. The first message was from an address in Sacramento. The last message was from a location in West Sacramento where Detective Nyland ultimately recovered the computer. Defendant told Detective Nyland he had been present when Boyle gave the computer to a resident at the first address.

On July 29, 2013, Detective Nyland spoke with defendant at the jail. He was "extremely excited" that the stolen property had been found. Detective Nyland told defendant that there was video surveillance for the fingerprint found at the Davis home, video showing the cargo van pulling up to the house, and video of a person emerging from the van carrying a clipboard. Defendant then admitted that he had committed the Davis burglary along with Boyle. Defendant explained that the burglary was "all planned out," such that "if someone answered the door, we would tell them that we were in the business of pressure washing and would you like your house or driveway pressure washed." Defendant admitted to Detective Nyland on three to six occasions that he had been involved in the Davis burglary. Defendant did not later deny his involvement in the Davis burglary.

*Defense*

The defense recalled Detective Nyland as its witness. Detective Nyland testified that defendant had been wearing aviator-type sunglasses when he was arrested.

5

DISCUSSION

I

*Evidence of Placer County Burglary*

Defendant contends the trial court erred when it admitted over his objection irrelevant and prejudicial evidence of the subsequent burglary of the Devaults' Placer County vacation home. We disagree.

At the beginning of trial, defense counsel made an oral motion to exclude any evidence related to the Placer County burglary as irrelevant and prejudicial. The prosecutor countered that facts from the Placer County burglary were "part of the whole investigation" and were "intertwined" with the Davis facts. She argued that without the Placer County facts it would not be "clear how this investigation went forward."

The trial court denied the motion, ruling in relevant part:

"[I]f the detective testifies about what [defendant] told him about other people, then the jury is going to hear that [defendant] was somehow in association with people who are committing crimes.

"The fact that there were some other crimes and what the details of those were does not, then, just come in out of the blue and then have prejudicial effect.

"And the manner in which the investigation occurred, testifying about that, does not appear to substantially outweigh -- any prejudice from that does not appear to substantially outweigh the probative value.

"And part of the relevance and probative value, frankly, has to do with [Evidence Code section] 1101(b) intent. [Defendant's] intent is at issue in Count 1, did he go into the home with the intent to steal something?

"And the type of information that everyone is talking about right now, [defendant] being in association with people who are committing thefts, with people collecting stolen property at a location, that sort of thing, could tend, under Evidence Code section

6

1101(b), to show he had the intent at the time he entered the home to steal something, so it is Evidence Code section 1101(b) evidence as well, and it has relevance that way."

"Only relevant evidence is admissible [citations], and all relevant evidence is admissible, unless excluded under the federal or California Constitution or by statute. [Citations.] Relevant evidence is defined in Evidence Code section 210 as evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations], but lacks discretion to admit irrelevant evidence. [Citations.]" (*People v. Scheid* (1997) 16 Cal.4th 1, 13-14.)

The trial court found that the Placer County burglary was relevant because "[Defendant's] intent is at issue in [the Davis burglary], did he go into the home with the intent to steal something? [¶] And the type of information that everyone is talking about right now, [defendant] being in association with people who are committing thefts, with people collecting stolen property at a location, that sort of thing, could tend . . . to show he had the intent at the time he entered the home to steal something, . . . and it has relevance that way." The trial court did not find or suggest that *defendant,* as opposed to Boyle, was a perpetrator of the Placer County burglary.

Contrary to defendant's argument, the "fact that the [Placer County] home was burglarized soon after the Davis home," presumably by Boyle who was collecting stolen property at his residence, coupled with evidence that defendant had extensive knowledge of Boyle's activities, was relevant to show *defendant's* intent when he entered the Davis home in the company of Boyle. Defendant's knowledge of Boyle and his accompaniment of Boyle during his entry into the Davis home tends " ' "logically, naturally, and by reasonable inference" ' " to establish the material fact that defendant, like Boyle, entered with intent to commit theft. (*People v. Scheid, supra,* 16 Cal.4th at

7

pp. 13-14.) Defendant's claim that the evidence had "no tendency in reason to establish his guilt" of the Davis burglary has no merit.

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

"The governing test . . . evaluates the risk of 'undue' prejudice, that is, ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues," ' not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

The charged Davis offense and the Placer County burglary were the same type of crime, committed against the same victims, at essentially the same time -- separated by only a few days. Against the backdrop of the Davis burglary, the Placer County burglary did not tend *uniquely* to evoke an emotional bias against defendant as an individual, and it had a significant effect on the issue of defendant's intent. The trial court's refusal to exclude the Placer County evidence pursuant to Evidence Code section 352 was not arbitrary, capricious, or patently absurd and did not result in a manifest miscarriage of justice. (*People v. Rodrigues, supra,* 8 Cal.4th at pp. 1124-1125.)

Defendant argues that the Placer County evidence was "unnecessary" and that the prosecution had no "right" to "over-prove their case or put on all the evidence that they have." (*People v. Williams* (2009) 170 Cal.App.4th 587, 610 (*Williams*).) *Williams* is

8

distinguishable because it involved "the cumulative impact of admitting evidence of dozens of prior crimes." (*Ibid*.) The trial court had acknowledged that the prosecution had presented "a repeat of previous evidence" but it had refused " 'to state that it's cumulative.' " (*Ibid*.) The appellate court held that this refusal to limit cumulative evidence was error. (*Id*. at pp. 610-611.) Here, in contrast, the Placer County evidence was not cumulative to the Davis evidence. Defendant's reliance on *Williams* is misplaced.

Defendant cites *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*) for the proposition that "in most prosecutions for crimes such as burglary and robbery, it is beyond dispute that the charged offense was committed by someone; the primary issue to be determined is whether the defendant was the perpetrator of that crime. Thus, in such circumstances, evidence that the defendant committed uncharged offenses that were sufficiently similar to the charged offense to demonstrate a common design or plan (but not sufficiently distinctive to establish identity) ordinarily would be inadmissible. Although such evidence is relevant to demonstrate that, assuming the defendant was present at the scene of the crime, the defendant engaged in the conduct alleged to constitute the charged offense, if it is beyond dispute that the alleged crime occurred, such evidence would be merely cumulative and the prejudicial effect of the evidence of uncharged acts would outweigh its probative value." (*Id*. at p. 406.)

But *Ewoldt* explained that "evidence of a common design or plan is admissible only to establish that the defendant engaged in the conduct alleged to constitute the charged offense, not to prove other matters, *such as the defendant's intent* or identity as to the charged offense. [Citation.]" (*Id*. at p. 406; italics added.) Here, the trial court found that the Placer County evidence was relevant to show defendant's *intent* during the Davis burglary, not to show common design or plan. Thus, the *Ewoldt* limitation on common design evidence did not apply.

Nevertheless, *Ewoldt* is directly relevant to defendant's claim of prejudice. As in that case, the "testimony describing [the Placer County burglary] . . . was no stronger and no more inflammatory than the testimony concerning the charged [Davis burglary]. This circumstance decreased the potential for prejudice, because it was unlikely that the jury disbelieved [the prosecution case] regarding the charged offenses but nevertheless convicted defendant on the strength of [the Placer County evidence], or that the jury's passions were inflamed by the evidence of defendant's uncharged offense[]." (*Ewoldt, supra*, 7 Cal.4th at p. 405.)

In any event, in light of the overwhelming evidence of the Davis burglary, including defendant's fingerprint on sunglasses found at the crime scene but not owned by the victims, as well as defendant's extensive admissions to Detective Nyland, it is not reasonably probable that exclusion of the Placer County evidence would have yielded a result more favorable to defendant. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

II

*Defendant's Request to Dismiss Prior Convictions*

Defendant contends the trial court's denial of his *Romero* request was an abuse of discretion because "the record shows neither the balancing nor consideration of the individualized particulars of his 'background, character and prospects,' in particular his role in the burglary and his cooperation with investigators [that] led to the identification of the principal perpetrator . . . and to the recovery of much of the stolen property.

Following the verdict, defendant filed a sentencing brief requesting the trial court in its discretion to set aside for purposes of sentencing his November 2007 burglary conviction (strike prior) and two of his prior prison terms pursuant to section 1385 and *Romero*. The sentencing brief asserted that defendant's history of drug addiction weighed in favor of leniency. Defendant's mother was a heroin addict when he was a child, and he has been addicted to drugs including heroin since he was eight years old. The 2007 strike prior stemmed from defendant's drug history.

10

The sentencing brief further asserted that defendant's cooperation in the recovery of the stolen property should be a factor in mitigation. His cooperation also led to the recovery of property stolen in unrelated incidents. The brief asserted that defendant's cooperation served the public interest and deserved a reduced sentence.

The prosecution did not file a written response.

At the hearing, the trial court stated: "I've read the sentencing brief and *Romero* motion from the defense as well as a statement in mitigation." After ascertaining that the defense had nothing to add to its *Romero* request, the trial court stated: "The motion to strike the prior strikes [*sic*] is denied. [Defendant] is not outside the scheme [*sic*] of the Three Strikes Law. He falls squarely within it, so granting the *Romero* motion would be reversible error, and the ink on my order wouldn't even dry by the time they got it back to us, so *Romero* motion denied."

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (§ 1385; *Romero, supra*, 13 Cal.4th at p. 504; *People v. Meloney* (2003) 30 Cal.4th 1145, 1155.) A trial court's refusal to strike a prior conviction allegation is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) Under that standard, the party seeking reversal must " 'clearly show that the sentencing decision was irrational or arbitrary. [Citation.]' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Carmony*, at p. 378.) Only extraordinary circumstances justify a finding that a career criminal is outside the three strikes law. (*Ibid*.) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his

11

background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The three strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony, supra,* 33 Cal.4th at p. 378; *In re Large* (2007) 41 Cal.4th 538, 550-551.) We presume the trial court considered all the relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)

Defendant concedes that the trial court "appeared to be aware of its discretion." The court stated that it had read defendant's sentencing brief, which had addressed the scope of the court's discretion.

Defendant claims "the record shows neither the balancing nor consideration of the individualized particulars of his 'background, character and prospects,' in particular his role in the burglary and his cooperation with investigators." This claim inverts our standard of review. We presume the court considered all relevant factors *in the absence of an affirmative record to the contrary*. (*Myers, supra,* 69 Cal.App.4th at p. 310.) The mere absence of an affirmative showing of balancing and consideration does not warrant reversal of the judgment.

As noted, a trial court ruling upon a *Romero* request must consider whether "the defendant may be deemed outside the scheme's *spirit*, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams, supra,* 17 Cal.4th at p. 161; italics added.) The trial court paraphrased this standard, a bit inartfully, when it stated: "[Defendant] is not outside the scheme [*sic*] of the Three Strikes Law."

Making the most of the inartful paraphrase, defendant argues the "scheme" of the three strikes law "provides for enhanced punishment for certain recidivists. Presumably, all defendants whose strike allegations are found true fall within the law's 'scheme.' " He emphasizes that what is at issue on a *Romero* request is not whether the defendant is within the scheme, but within the scheme's spirit. Thus, defendant claims it "does not appear that the trial court understood the nature and scope of the decision called for" in ruling on a *Romero* request.

The record does not affirmatively indicate whether the trial court simply misspoke or whether it in fact misunderstood the scope of its discretion. Absent an affirmative indication of the latter, as opposed to the former, the trial court's ruling must be upheld. (*Myers, supra,* 69 Cal.App.4th at p. 310.)

DISPOSITION

The judgment is affirmed.

                                   HULL            , J.

We concur:

      RAYE           , P. J.

      BLEASE        , J.