Filed 1/28/26  P. v. Osuna CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B340274 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. PA085514; PA086641) |
| v. | |
| RAUL OSUNA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 2017 a jury convicted Raul Osuna of second degree robbery, assault with a deadly weapon, and violation of a criminal street gang injunction (case No. PA085514) (the robbery case). The jury also found true an allegation Osuna used a dangerous weapon (a knife) during the robbery, and Osuna admitted in a bifurcated proceeding that he had a prior strike conviction, a prior serious felony conviction, and two one-year prior prison term enhancements pursuant to Penal Code section 667.5, former subdivision (b).[1] On the day of sentencing, Osuna pleaded no contest in a second case (case No. PA086641) to felony evading a peace officer in willful or wanton disregard for the safety of persons or property (the evading case). The trial court sentenced Osuna to 20 years in state prison for the robbery case and a consecutive term of 16 months in state prison for the evading case.

In 2024 the superior court recalled Osuna's sentence (on both cases) under section 1172.75, struck the remaining one-year prior prison term enhancement (the other had already been stricken), reduced the sentence for assault with a deadly weapon by two years, and otherwise imposed the same sentence, resulting in an aggregate sentence of 16 years in the robbery case plus a consecutive term of 16 months.

On appeal, Osuna contends the superior court abused its discretion in denying his request under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss his prior strike conviction and denying his request under section 1385, subdivision (c)(2), to strike the five-year enhancement for a prior

---

[1]    Further undesignated statutory references are to the Penal Code.

2

serious felony conviction. Osuna also argues the court erred in reimposing the upper term on the robbery count because there was no jury finding of aggravating circumstances, as required under section 1170, subdivision (b)(2). Finally, Osuna asserts the court abused its discretion in not imposing the lower term on the robbery count under section 1170, subdivision (b)(6), because he was a youth when he committed the robbery.

We find no error or abuse of discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Osuna's 2017 Conviction of Robbery and Assault with a Deadly Weapon*

We described the factual background of Osuna's convictions in the robbery case in Osuna's direct appeal. (See *People v. Osuna* (Mar. 19, 2019, B284737) [nonpub. opn.].) On January 11, 2016 Ricardo Herrera was on duty as a loss prevention officer for a supermarket in Sylmar. Shortly before noon Herrera saw Osuna enter the store and walk toward the liquor display. Osuna took two bottles of whiskey off the shelf, then concealed the bottles under his jacket. Osuna left the store without paying for the liquor.

Herrera followed Osuna into the parking lot. Osuna noticed Herrera following him and started running. Herrera identified himself as a loss prevention officer, but Osuna continued running at a full sprint through the parking lot. Herrera pursued Osuna while continuing to identify himself as a loss prevention officer and directing Osuna to give up the bottles of whiskey. When he arrived at the edge of the parking lot, Osuna stopped running and began walking on the sidewalk.

3

Herrera continued to tell Osuna, "Drop the bottles, drop the bottles, man.  Just get out of here.  Give me the merchandise."  Osuna did not comply, and Herrera called 911.  When Osuna saw Herrera making the call, he yelled, "I'm going to come back.  I'm going to get you.  I'm going to remember you."  Osuna's threat frightened Herrera because Herrera believed Osuna was a gang member based on the baseball cap Osuna was wearing (commonly worn by members of the San Fernando criminal street gang).

Herrera testified that while he was on the telephone with the 911 operator, Osuna "suddenly stops, places the bottles on the ground and turns around already with a knife in hand [and] said, 'Yeah, yeah, you want some?' and starts charging full speed at me."  Herrera was scared and nervous "because he got so close to me, he was catching up to me when he started running with the knife. . . .  I knew if I didn't put anything between us . . . that he was going to stab me."  Herrera told the operator there was a "suspect with a knife trying to charge at me. . . .  Suspect is trying to stab me with a knife."  At this point, an armed security guard from the supermarket approached, and Osuna made a telephone call.  Moments later, a car pulled up, Osuna got in the car holding the whiskey bottles, and the car drove away.

Osuna acknowledged in his testimony that it was "not right" to steal the liquor, and he regretted it.  Osuna denied speaking to Herrera, having a knife, or chasing Herrera.  On cross-examination Osuna admitted he was a member of the San Fernando criminal street gang and acknowledged having been served with a gang injunction in 2008.  He also admitted prior felony convictions for grand theft from a person in 2012 and driving another person's vehicle without consent in 2014.

4

The jury found Osuna guilty of second degree robbery (§ 211), assault with a deadly weapon (§ 422, subd. (a)), and misdemeanor violation of a gang injunction (§ 166, subd. (a)(9)), and it found true the allegation Osuna had used a deadly or dangerous weapon (a knife) during the robbery.[2] Osuna admitted the gang enhancement allegation (§ 186.22, subd. (b)(1)(A)) was true. He also admitted he had suffered a prior serious or violent felony conviction (for grand theft with a gang enhancement) within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12), which was a prior serious felony within the meaning of section 667, subdivision (a), and he had served two separate prison terms for felony convictions within the meaning of section 667.5, former subdivision (b).

At the sentencing hearing on August 23, 2017, the trial court denied Osuna's *Romero* motion to dismiss his prior strike conviction. The court explained that Osuna was about to turn 27 years old, his prior grand theft conviction was initially charged as a robbery, but "[h]e was given the opportunity as a young man not having had any prior criminal history to plead to grand theft person." Further, Osuna's violation of the gang injunction showed that he continued to be an active gang member. Moreover, he was released on parole from state prison on March 29, 2012 and was on parole in 2014 when he committed the offense of driving or taking a vehicle without consent, and he was on parole when he committed the current offenses in 2016. Thus, he was not "amenable to parole." The court also observed

---

[2] The trial court dismissed a charge for making a criminal threat after the jury was unable to reach a verdict.

5

that Osuna wielded a knife and threatened the security guard, who was clearly in fear.

The trial court sentenced Osuna to 20 years in state prison comprising the upper term of five years for robbery, doubled under the three strikes law, plus one year for the weapon enhancement; a consecutive term of two years for assault with a deadly weapon (one-third the middle term, doubled under the three strikes law); plus five years for the prior serious felony conviction and one year for each of the two prior prison term enhancements.  The court imposed a concurrent term of six months for violation of the gang injunction.

We affirmed Osuna's convictions but remanded for the trial court to consider whether to strike the five-year prior serious felony enhancement under section 667, subdivision (a), based on new legislation giving the trial court discretion to strike the enhancement.  We also ordered the trial court, if it did not strike the five-year enhancement, to stay execution of one of the one-year prior prison term enhancements pursuant to section 667.5, former subdivision (b), because the court could not impose both the five-year and one-year enhancements for the same prior offense.  (*People v. Osuna, supra*, B284737.)  On remand, the court declined to strike the five-year serious felony enhancement, but it stayed one of the two prison prior enhancements, reducing the aggregate sentence to 19 years.

B.    *Osuna's 2017 Conviction of Felony Evading a Peace Officer*
On the date of sentencing in the robbery case (August 23, 2017), Osuna pleaded no contest to one count of felony evading a peace officer in willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2).  The complaint alleged that on June 24, 2016, Osuna was stopped for a traffic violation

but fled the scene, committed numerous traffic violations, and evaded the police. Osuna admitted the allegation he committed the offense when out on bail (Pen. Code, § 12022.1), had suffered a prior strike conviction, and had served two prior prison terms within the meaning of former section 667.5, subdivision (a). The trial court denied Osuna's *Romero* motion (for the same reasons discussed as to the robbery case) and sentenced him to 16 months in state prison (one-third the middle term of two years, doubled) to run consecutive to the sentence in the robbery case. The court imposed and stayed execution of two years for the out-on-bail enhancement. The court did not impose additional time for the one-year prison priors because the sentence ran consecutive to the sentence in the robbery case.

C.    *Osuna's Resentencing Under Section 1172.75*

In 2022 the California Department of Corrections and Rehabilitation identified Osuna on a list of inmates who were eligible for resentencing pursuant to Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483), which retroactively invalidated one-year prison priors imposed under section 667.5, former subdivision (b). The superior court appointed counsel for Osuna.

On June 24, 2024 Osuna filed a motion for resentencing under section 1172.75 with respect to his robbery and evading cases, requesting the superior court invalidate his two one-year prison priors and reduce his sentence further by striking or staying all sentence enhancements other than for his personal use of a knife in committing the robbery. Specifically, Osuna requested the court dismiss his prior strike conviction and strike or stay the five-year serious felony enhancement. Osuna also urged the court to impose the lower or middle term for the

7

robbery count.  Osuna requested as to the evading case that the court impose the middle term of eight months (instead of 16 months).

In his motion, Osuna argued the superior court in resentencing him should consider ameliorative changes to the law under (1) Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (amending section 1385, subdivision (c)(2), to require courts to give great weight to specified mitigating circumstances); (2) Senate Bill No. 1393 (2017-2018 Reg. Sess.) (providing the court with discretion to strike the five-year prior serious felony enhancement); (3) Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (requiring a jury finding of aggravating circumstances to support imposition of the upper term); and (4) Assembly Bill No. 124 (2021-2022 Reg. Sess.) (requiring imposition of the lower term if specified mitigating circumstances are present, including that a defendant's youth contributed to the crime, unless aggravating circumstances far outweigh the mitigating circumstances).  Osuna also argued the court should impose the lower term because he was a youth (25 years old) at the time of commission of the current offenses.

Osuna acknowledged he had three prior convictions, including a 2011 misdemeanor conviction for vandalism (§ 594, subd. (a)), a 2012 felony strike conviction for grand theft with a gang enhancement (§§ 487, subd. (c), 186.22), and a 2014 felony conviction for driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)).  He served prison sentences for the 2012 and 2014 convictions.  While in prison he had rules violation reports (RVR's) in 2017 for a fight with another inmate, profanity toward staff and refusal to follow orders, damage to two sheets and a blanket, and possession of alcohol (pruno).  He also had

8

RVR's in 2020 for battery on an inmate and possession of alcohol (pruno).

Osuna highlighted that he was working to rehabilitate himself while incarcerated. He completed an adult school program in 2017, and in 2019 he completed his General Educational Development (GED) test and received a high school equivalency certificate. He participated in substance abuse recovery support groups in 2020, and in 2021 he enrolled in a paralegal certificate program. Osuna was employed while in prison as a dining room worker and yard worker. Osuna submitted supporting documents, including a letter of contrition, two offers of employment upon his release, a list of three reentry programs to which he had applied, and two letters from family friends discussing his growth and maturity.

The People argued in their opposition that the superior court should not reduce Osuna's sentence other than to dismiss the prison priors because he posed a public safety risk and reducing his sentence was not in the interest of justice. The People noted Osuna's three prior convictions and that he was on parole when he committed the robbery and evading offenses. In addition, he had seven RVR's, and in the 2020 incident, Osuna and another inmate attacked inmate Rodriguez, hitting him with their fists on his face and torso. Rodriguez suffered severe injuries, including a cut to the back of his head and right shoulder and bruising on his nose and back. The People urged the court to reimpose the upper term for assault in light of the aggravating factors that Osuna had admitted two prison priors, his convictions were increasing in number and seriousness, and he had continued to be violent while in custody, including the 2020 battery.

At the outset of the August 8, 2024 resentencing hearing, the superior court indicated it had read Osuna's motion and the prosecutor's opposition. Osuna's mother testified that at the time of the offenses, Osuna was a young man who did not think about the consequences of his actions. He was now sorry about what he had done and was eager to make a better life for himself and to be a good father to his nine-year-old daughter and 14-year-old son. She noted Osuna had matured since he committed the crimes.

Osuna also addressed the superior court, stating that at the time of the offenses he was not "fully mentally prepared and stable emotionally." He acknowledged that he had "lash[ed] out" at other inmates, as recently as 2020. He previously had a drinking and drug abuse problem, but he had found religion (Buddhism), which taught him how to consider his actions in advance. Further, he did not intend to go "back to [his] reckless ways" upon his release. The court asked Osuna about the fact he had been caught with alcohol two times while in prison, to which Osuna stated he had stopped drinking "years ago" and, if released, he would seek out resources like Alcoholics Anonymous classes.

Osuna's counsel argued that Osuna had "changed" and urged the superior court to take into account that Osuna had obtained his GED certificate, lined up employment, and looked into reentry programs. Further, Osuna now understood that he had an alcohol problem and needed help. The court inquired whether the prison fight was gang-related, to which counsel responded it was not, as shown by the fact that no weapons were found by the guards (which gang members would have used).

The prosecutor provided the superior court with a certified "rap sheet" showing his convictions and submitted on her papers.

The superior court addressed Osuna, stating his statement of contrition "seems sincere," and it was impressed that Osuna had worked to get his high school equivalency certificate even before the law was changed to entitle him to resentencing. However, there were multiple factors weighing against reducing Osuna's sentence beyond striking the one-year prior prison term enhancement, including that he was a documented gang member, had committed "very serious crimes," and was on parole at the time of the offenses.

The superior court reduced Osuna's sentence from 19 to 16 years, but it declined to reduce the term any further. The court explained it had considered the motion and opposition, the "new statutory authority," and amendments to section 1385. With respect to count 1 for robbery, the court reimposed the upper term of five years, doubled under the three strikes law (implicitly denying the *Romero* motion), based on the aggravating factor under California Rules of Court, rule 4.421(b)(2) that Osuna's convictions were numerous or of increasing seriousness, relying on the certified rap sheet. On count 3 for assault with a deadly weapon, however, the court imposed the lower term of two years to run concurrent, thereby reducing the sentence by two years. The court reimposed the concurrent six-month term on the misdemeanor gang injunction and the one-year weapons enhancement on the robbery count. The court acknowledged it had discretion to strike the prior serious felony enhancement, but it elected not to exercise that discretion, instead reimposing the five-year enhancement. Finally, the court struck the remaining

11

one-year prison prior pursuant to section 1172.75, resulting in an aggregate sentence of 16 years.

With respect to the evading case, the court elected not to modify the sentence, reimposing the 16-month consecutive term.

Osuna timely appealed.

## DISCUSSION

A.    *Section 1172.75 and Standard of Review*

"'Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  [Citation.]  Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) . . . amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses.  [Citations.]  Enhancements based on prior prison terms served for other offenses became legally invalid.'"  (*People v. Garcia* (2024) 101 Cal.App.5th 848, 854 (*Garcia*); accord, *People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.)

The Legislature later enacted Senate Bill 483, effective January 1, 2022, to make the changes implemented by Senate Bill No. 136 retroactive by adding former section 1171.1 (now section 1172.75).  (See Stats. 2021, ch. 728, § 1 ["it is the intent of the Legislature to retroactively apply . . . Senate Bill 136 . . . to all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements"]; *Garcia, supra*, 101 Cal.App.5th at pp. 854-855.)

Section 1172.75, subdivision (a), provides, "Any sentence enhancement that was imposed prior to January 1, 2020,

12

pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." The Department of Corrections and Rehabilitation is required to identify for the sentencing courts all persons "currently serving a term for a judgment that includes an enhancement described in subdivision (a)." (§ 1172.75, subd. (b).) Further, if a sentencing court verifies a defendant was sentenced under an invalid enhancement, the court "shall recall the sentence and resentence the defendant." (*Id.*, subd. (c).)

"'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'" (*Garcia, supra*, 101 Cal.App.5th at p. 855; accord, *People v. Grajeda* (2025) 111 Cal.App.5th 829, 836.) Section 1172.75, subdivision (d)(1), states the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," and further, resentencing "shall not result in a longer sentence than the one originally imposed."

Section 1172.75, subdivision (d)(2), provides further that the sentencing court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) However, subdivision (d)(4) states as to upper term sentences that "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation

13

that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Section 1172.75, subdivision (d)(3), provides that "[t]he court may consider postconviction factors, including but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

We review a trial court's sentencing determinations in a section 1172.75 resentencing proceeding for an abuse of discretion. (*People v. Mathis* (2025) 111 Cal.App.5th 359, 366 (*Mathis*), review granted Aug. 13, 2025, S291628; see *Garcia, supra*, 101 Cal.App.5th at pp. 855-856 [reviewing determination under § 1172.75, subd. (d), that a sentence reduction would endanger public safety for abuse of discretion].) However, where the appeal from a resentencing order "raises a question of law, our review is de novo." (*Mathis*, at p. 366; see *People v. Espino* (2024) 104 Cal.App.5th 188, 194, review granted Oct. 23, 2024, S386987 [de novo review whether the term "imposed" as used in § 1172.75 applies to cases where execution of a prior prison term enhancement was stayed]; accord, *Cox v. City of Oakland* (2025) 17 Cal.5th 362, 373 [""""The interpretation of a statute presents a question of law that the court reviews de novo."""""].)

14

B.      *The Superior Court Did Not Abuse Its Discretion in Denying Osuna's* Romero *Motion*

1.      *Governing law on* Romero *motions and standard of review*

A trial court has discretion under section 1385, subdivision (a), to dismiss a strike conviction for purposes of sentencing in furtherance of justice. (*People v. Williams* (1998) 17 Cal.4th 148, 158; *Romero, supra*, 13 Cal.4th at p. 530.) In determining whether to strike a prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161; accord, *People v. Dain* (2025) 18 Cal.5th 246, 257.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*); accord, *People v. Dain, supra*, 18 Cal.5th at pp. 257-258.) A trial court does not abuse its discretion unless its ruling "is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377; accord, *People v. McDowell* (2012) 54 Cal.4th 395, 430.) The party challenging the sentence has the burden to show the sentence was irrational or arbitrary. (*Carmony*, at p. 376; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1140 (*Avila*).) "'"In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary

15

determination to impose a particular sentence will not be set aside on review.'" [Citations.] . . . "'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'" (*Carmony*, at pp. 376-377.)

Because the three strikes law "creates a strong presumption that any sentence that conforms to [the law's] sentencing norms is both rational and proper," there are very limited circumstances under which the appellate court will find an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 378.) These circumstances include where the court is unaware of its discretion to strike a prior conviction; it considers impermissible factors; or, under the circumstances, imposition of a three strikes sentence would be irrational or arbitrary. (*Ibid.*; *Avila, supra*, 57 Cal.App.5th at pp. 1140-1141.) Only under "'extraordinary'" circumstances does the court's failure to strike a prior conviction constitute an abuse of discretion. (*Carmony*, at p. 378; accord, *People v. Finney* (2012) 204 Cal.App.4th 1034, 1040 ["Once a career criminal commits the requisite number of strikes, the circumstance must be 'extraordinary' before he can be deemed to fall outside the spirit of the three strikes law."].)

2.     *The superior court did not abuse its discretion*

Osuna contends the superior court abused its discretion in denying his *Romero* motion because the court failed to consider that he was a youthful offender when he committed the strike offense. We agree that a defendant's youth at the time the defendant committed a strike offense may be a mitigating factor for the court to consider in ruling on a *Romero* motion. As the Court of Appeal explained in *Avila, supra*, 57 Cal.App.5th at pages 1141 to 1142, with respect to strike offenses the defendant

16

committed when he was 18 and 20 years old, "Avila's age when he committed his strikes, even if not dispositive, is plainly relevant to the nature and circumstances of the strikes and could be a mitigating factor.  This is in line with the increasing recognition that young adults are constitutionally different from adults for sentencing purposes because of their diminished culpability and greater prospects for reform.  [Citation.]  That we are considering what sentence to impose on the *middle-aged* Avila does not preclude consideration that it was a *youthful* Avila who committed the prior strikes, for the purposes of *Romero*."  The *Avila* court concluded the trial court abused its discretion in denying the *Romero* motion because the defendant's strike offenses were remote (26 and 28 years old) and the court mistakenly believed that it could not consider the defendant's youth at the time he had committed the offenses as a mitigating factor.  (*Id*. at pp. 1141, 1145.)

Osuna argues the superior court, like the court in *Avila*, failed to consider Osuna's youth, noting the court did not mention Osuna's age during the resentencing hearing.  We do not find this contention persuasive.  The record was replete with references to Osuna's age and youth at the time he committed the strike offense.  In Osuna's letter of contrition submitted with his motion, he stated he was then 33 years old, "mentally far" from the "prideful, egotistic[al] 25 year old that committed this crime on January of 2016."  The probation report showed Osuna was born in April 1990.  Osuna's motion listed the date of each of Osuna's convictions:  the strike offense on March 14, 2012, the offense of driving or taking a vehicle without consent on October 27, 2014, and the robbery and evading offenses on January 11 2016, thereby showing he was convicted of the strike

17

offense at 21, the driving or taking offense at 24, and the current offenses at 25.[3]

In addition, Osuna's mother testified at the hearing that at the time of the underlying crimes, he was a "young man who didn't think about the consequences of his actions," but he was no longer an "immature young man." Osuna likewise explained that at the beginning of his "journey," he was not "mentally prepared and stable emotionally." Further, he claimed that if he were released, he would not return to his prior "reckless ways."

Moreover, the sentencing court is not required to state its reasons for declining to exercise its discretion to dismiss a prior strike conviction. (*In re Large* (2007) 41 Cal.4th 538, 550 ["While a court must explain its reasons for striking a prior [citations], no similar requirement applies when a court declines to strike a prior"]; *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 (*Brugman*) ["'[t]he trial court is not required to state reasons for declining to exercise its discretion'"].) Nor does the fact the superior court mentioned other factors, including Osuna obtaining his GED certificate and his "sincere" letter of contrition (as mitigating) and the seriousness of the crimes and gang membership (as aggravating) mean it did not also consider Osuna's youth. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor"].) Accordingly, "[i]n the absence of evidence to the contrary, we presume that the trial court considered all of the relevant factors and properly applied

_____

[3]     We use Osuna's age at the time of the prior convictions, as do the parties, because the record does not reflect his age at the time he committed the offenses.

18

the law." (*Brugman*, at p. 638; accord, *Carmony, supra*, 33 Cal.4th at p. 378.)[4]

Osuna has failed to show the superior court's ruling in denying his *Romero* motion was "so irrational or arbitrary that no reasonable person could disagree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) The court acknowledged Osuna's achievements while in prison and commended him for obtaining a GED certificate even before he could benefit from resentencing. Although the court did not explicitly reference Osuna's other rehabilitation efforts, the court noted it had read the motion, which outlined (and Osuna's attorney highlighted) that Osuna was employed while in prison, lined up post-release employment, looked into reentry programs, and participated in substance abuse programs and a paralegal certificate class while in custody.

---

[4] Osuna's reliance on *People v. Pittman* (2023) 96 Cal.App.5th 400, 417 is misplaced. The Court of Appeal in *Pittman* addressed the relevance of the defendant's youth in determining whether he acted with implied malice for purposes of resentencing under section 1172.6. (*Id*. at pp. 403-404.) The court reasoned, in remanding to the trial court to consider the defendant's youth, that "there was no discussion of Pittman's youth in the proceedings in the trial court, and the court did not mention the subject in its otherwise comprehensive ruling," and therefore the court on appeal could not "assume the trial court implicitly considered it." (*Id*. at p. 417.) Here, as discussed, there was extensive discussion of Osuna's youth in his motion, statement of contrition, and testimony from Osuna and his mother. Moreover, in *Pittman*, the court observed that appellate courts had only recently held that a defendant's youth was relevant in the context of a section 1172.6 motion. (*Pittman*, at p. 417.)

19

But there were significant aggravating factors, including, as the superior court highlighted, that Osuna had committed "very serious crimes," was on parole when he committed the crimes, and was a documented gang member. As the trial court found at Osuna's initial sentencing, during the robbery Osuna wielded a knife and threatened the store guard who was in fear for his life. Further, Osuna was a member of a gang when he committed the strike offense in 2012, and he admitted he was still a gang member when he committed the current offenses in 2016. More recently, Osuna got into fights in prison in 2017 and 2020. In the 2020 incident, he and another inmate hit a third inmate with their fists on his face and torso, causing severe injuries to the inmate's head and shoulder and bruising on his nose and back. That incident occurred just four years before the resentencing hearing, when Osuna was 30 years old.

In addition, although Osuna highlighted his efforts to obtain sobriety, he had two RVR's for possession of alcohol in prison. The superior court asked Osuna about these RVR's, and Osuna responded that he had stopped drinking "years ago," but the court may well have found this unconvincing given his RVR history. The court was in the best position to evaluate Osuna's credibility as to whether he had overcome his drinking problem. Similarly, although Osuna's counsel represented that the violent attack in 2020 was not gang-related, given Osuna's history of being in a gang and the severity of the beating in 2020, it was for the court to determine whether it believed Osuna was still involved with a gang and whether he would return to the gang life upon his release.

C.    *The Superior Court Did Not Abuse Its Discretion in Declining To Strike the Five-year Serious Felony Enhancement*

Osuna contends the superior court abused its discretion in declining to dismiss the five-year prior serious felony enhancement under section 1385, subdivision (c)(2), because the court did not find dismissal "would endanger public safety" and it did not give the mitigating circumstances "great weight."  The court did not abuse its discretion.

Under section 1385, subdivision (c)(1), added by Senate Bill 81, a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2), provides that, in exercising its discretion under subdivision (c), "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  The enumerated mitigating circumstances include, as relevant here, that "[m]ultiple enhancements are alleged in a single case" (§ 1385, subd. (c)(2)(B)) and "[t]he enhancement is based on a prior conviction that is over five years old" (*id*., subd. (c)(2)(H)).

The Supreme Court in *People v. Walker* (2024) 16 Cal.5th 1024, 1029 clarified that section 1385, subdivision (c)(2), does not require dismissal of a sentence enhancement anytime there is a mitigating circumstance absent a court finding that dismissal would endanger public safety.  The *Walker* court explained,

21

"[A]bsent a finding that dismissal would endanger public safety, the court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Walker*, at p. 1029; accord, *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 ["Section 1385(c) does not mean that, whenever a listed mitigating circumstance is present, the trial court must dismiss all enhancements unless it finds dismissal would endanger public safety."].) As part of its analysis, the court in *Walker* adopted the approach taken by *People v. Ortiz* (2023) 87 Cal.App.5th 1087, which interpreted the mandate for sentencing courts to give "great weight" to enumerated mitigating circumstances to mean the court must "engage 'in a holistic balancing *with special emphasis* on the [nine] enumerated mitigating factors.'" (*Walker*, at p. 1029, quoting *Ortiz*, at p. 1098.)

We review the denial of a motion to dismiss an enhancement pursuant to section 1385 for an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 376; accord, *Brugman, supra*, 62 Cal.App.5th at p. 638 ["'[w]e review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of discretion'"].) As discussed with respect to the denial of a *Romero* motion, we only find an abuse of discretion if the

trial court's decision is "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.) The burden is on the party challenging the sentence to show the court's decision was irrational or arbitrary. (*Id.* at pp. 376-377.)

The superior court was aware of its discretion to strike the prior serious felony enhancement, stating, "I choose not to exercise my discretion as it relates to the 667(a)(1) prior, although I recognize I have the discretion to strike that, that will remain for five years." Further, the court was aware of the constraints on its discretion under section 1385, subdivision (c)(2), which Osuna set out in detail in a six-page discussion in his motion. That discussion stated the court was required to give "great weight" to the enumerated mitigating factors, including that there were multiple enhancements and that an enhancement was based on a conviction that was more than five years old. Although the court did not give specific reasons for denying the request to strike the enhancement (instead stating its reasons generally why the aggravating circumstances outweighed the mitigating circumstances), a sentencing court is not required to state its reasons for denying a request to dismiss an enhancement. (*People v. Bravo, supra*, 107 Cal.App.5th at p. 1157 ["Section 1385, subdivision (a), requires a trial court to state its 'reasons for the dismissal . . . orally on the record,' but there is no similar statutory requirement when a court denies a request to dismiss an enhancement."]; *Brugman, supra*, 62 Cal.App.5th at p. 637 [same]; cf. § 1385, subd. (a) ["The reasons for the dismissal shall be stated orally on the record."].)

The record supports an implied finding the superior court gave "great weight" to the enumerated factors but found

23

"substantial, credible evidence of countervailing factors" that neutralized the mitigating factors such that dismissal of the enhancement was not in furtherance of justice. (*People v. Walker, supra*, 16 Cal.5th at p. 1029.) The court was well aware that (1) the prior serious felony (the strike conviction) was committed in 2016, which was more than five years before the August 2024 sentencing; and (2) there were multiple enhancements, including the enhancement for a deadly or dangerous weapon. As discussed, the court also considered other mitigating factors, including that Osuna showed remorse in his letter and at the hearing and had obtained a high school equivalency certificate. And, as discussed, the motion highlighted multiple other mitigating circumstances.

However, as discussed with respect to the *Romero* motion, the superior court focused on significant aggravating circumstances, including the seriousness of the crimes, that Osuna was on parole when he committed the current offenses, and that he was a documented gang member in 2014 and 2016. Moreover, the court expressed concern with Osuna's RVR's in 2020 for alcohol possession and the violent fight, both of which showed that even as an adult Osuna continued to be violent and had not resolved his alcohol addiction that, according to Osuna's attorney, led to the robbery of the whiskey bottles in 2016. Accordingly, the court did not abuse its discretion in finding reduction of Osuna's sentence by five additional years was not in furtherance of justice.

D.  *The Superior Court Did Not Err in Resentencing Osuna to the Upper Term on the Robbery Count Without a Jury Finding of Aggravating Circumstances*

Osuna contends the superior court erred in reimposing the upper term on the robbery count without a jury finding of aggravating circumstances beyond a reasonable doubt, in contravention of the amendments to section 1170, subdivision (b)(2).  As we stated in *People v. Dozier* (2025) 116 Cal.App.5th 700, 713, we agree with the majority of the Courts of Appeal, which have held section 1172.75, subdivision (d)(4), creates an exception to the heightened factfinding requirements for upper-term sentences in a section 1172.75 resentencing proceeding where the trial court originally sentenced the defendant to the upper term.  That exception applies here.

As amended by Senate Bill 567, section 1170, subdivision (b)(2), provides, as relevant here, that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  Further, amended section 1170, subdivision (b)(3), provides as an exception to subdivision (b)(2) that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (See *People v. Jones* (2022) 79 Cal.App.5th 37, 44, citing § 1170, subd. (b)(1)-(3).)

Section 1172.75, subdivision (d)(4), provides, "*Unless the court originally imposed the upper term*, the court may not

impose a sentence exceeding the middle term unless there are circumstances in aggravation . . . , and those facts have been stipulated to . . . or have been found true beyond a reasonable doubt . . . ." (Italics added.) The only logical and grammatical reading of this provision is that the initial dependent clause starting with the word "[u]nless" creates an exception for sentences in which the upper term was originally imposed from the heightened factfinding requirements delineated in the independent clause ("[T]he court may not impose a sentence exceeding the middle term . . . ."). Moreover, had the Legislature intended to have the section 1170, subdivision (b)(2), requirements apply to all resentencing hearings under section 1172.75, doing so would render surplusage the language in section 1172.75, subdivision (d)(4), requiring heightened factfinding only for new upper term sentences.

The majority of the Courts of Appeal have reached the same conclusion. (See *Mathis, supra*, 111 Cal.App.5th at p. 374, review granted ["[S]ection 1172.75 is not ambiguous because more specific legislative enactments control over general ones. [Citation.] And here, section 1172.75, subdivision (d)(2), addresses the general topic of changes in law, whereas subdivision (d)(4) of that statute more specifically deals with the new factfinding requirement, making clear that it does *not* apply where 'the court originally imposed the upper term.'"]; *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466-467 (*Brannon-Thompson*) ["Giving this language [in section 1172.75, subdivision (d)(4),] its plain meaning, it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing."].)

Osuna relies on *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 330 (*Gonzalez*), which reached the opposite conclusion, reasoning that the interpretation adopted by the *Brannon-Thompson* court would violate the Sixth Amendment by allowing a court to impose an upper term sentence without a jury finding beyond a reasonable doubt on facts necessary to impose the upper term. The Court of Appeal in *Mathis, supra*, 111 Cal.App.5th at pages 372 to 373, review granted, rejected *Gonzalez*'s reasoning, observing that, as the Supreme Court explained in *People v. Lynch* (2024) 16 Cal.5th 730, 748, when the Legislature in 2007 amended section 1170, subdivision (b), it granted "trial courts 'broad discretion' to choose between the lower, middle, and upper terms. [Citations.] That sentencing scheme, in effect when Mathis was originally sentenced, was one that "'everyone agrees'" raised no Sixth Amendment concerns." (*Mathis*, at p. 371, citing *Lynch*, at pp. 747-748.)

Osuna was likewise initially sentenced in 2015, when the 2007 version of section 1170, subdivision (b), was in effect. As we explained in *People v. Dozier, supra*, 116 Cal.App.5th at page 713, until the Supreme Court decides the issue,[5] we agree with *Brannon-Thompson* and *Mathis*, and not *Gonzalez*. (See *Dozier*, at pp. 713-714, 716.) Accordingly, the superior court did not err in reimposing the upper term on the robbery count at Osuna's resentencing.

---

[5] The Supreme Court granted review in *People v. Eaton* (Mar. 14, 2025, C096853) (nonpub. opn.), review granted May 14, 2025, S289903, to decide whether section 1172.75, subdivision (d)(4), creates an exception to section 1172.75, subdivision (b)(2)'s heightened factfinding requirement.

E.    *The Superior Court Did Not Abuse Its Discretion in Not Imposing the Lower Term Based on Osuna's Youth*

Osuna contends the superior court abused its discretion in failing to sentence him to the lower term on the robbery count under section 1170, subdivision (b)(6), because he was 25 at the time he committed the crimes in 2016, and therefore his "youth" was a qualifying factor. Although it is undisputed that Osuna was 25 when he committed the offenses, the court did not abuse its discretion in failing to impose the lower term at the resentencing.

Senate Bill 567 amended section 1170, subdivision (b)(6), effective January 1, 2022, which provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." Section 1016.7, subdivision (b), defines a "youth" as "any person under 26 years of age on the date the offense was committed."

As the Supreme Court explained in *People v. Salazar* (2023) 15 Cal.5th 416, 419, section 1170, subdivision (b)(6), "creates a presumption that the sentencing court 'shall' enter a lower term sentence" when one of the enumerated factors "contributed to the offense." Further, "[t]he sentencing court may only depart from this lower term presumption if it finds that the aggravating circumstances outweigh the mitigating circumstances such that the lower term would be contrary to 'the interests of justice.'"

28

(*Salazar*, at p. 419.)  We review the court's sentencing decision under section 1170, subdivision (b)(6), for an abuse of discretion. (*Salazar*, at p. 428, fn. 8.)

Osuna argues we should remand the case to the superior court to consider Osuna's youth with respect to the robbery count because the court was not aware of the lower-term presumption under section 1170, subdivision (d)(6), as shown by the fact the court did not address Osuna's youth at the resentencing.  As discussed, however, the fact the court did not explicitly address Osuna's youth does not mean it was not aware of Osuna's age given the multiple references to his age and immaturity in the record and at the hearing.  Nor does it mean the court was not aware of the lower-term presumption under section 1170, subdivision (b)(6).  "'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law."'  [Citation.]  Thus, although the trial court did not specifically mention Penal Code section 1170, subdivision (b)(6), it is presumed to have known of the provision." (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905.)

In his resentencing motion, Osuna requested the superior court apply all ameliorative changes in the law, including Senate Bill 567.  Osuna also argued that because of Osuna's youth, the lower-term presumption applied.  As discussed, the court made clear it had reviewed the motion in preparation for the resentencing hearing.  Further, by the time of the resentencing hearing, two and a half years had passed since section 1170, subdivision (d)(6), took effect. We therefore presume the court was aware of the lower-term presumption.

Moreover, "[t]he statute does not mandate a presumption in favor of the lower term in every case in which the defendant was under age 26 at the time the crime was committed. Instead, the presumption applies only if the defendant's youth was 'a contributing factor' in his or her commission of the offense." (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991; accord, *People v. Knowles* (2024) 105 Cal.App.5th 757, 765 ["As made plain by the statutory text, the mere fact a defendant is young or has suffered past trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the low term presumption to apply."].)

Osuna has failed to show that his youth contributed to the crime, either in his motion or at the hearing, arguing only that he was a youth at the time of the crimes. Nothing in the record shows that there was peer pressure for Osuna to commit the robbery, nor was there evidence that he acted rashly because of his youth in charging at Herrera with a knife to escape with the two bottles of alcohol. Osuna's mother testified that Osuna was young and immature and did not consider the consequences of what he did. These are the hallmarks of youth, but nothing in the record shows that these factors contributed to Osuna's conduct in stealing the two bottles of alcohol and threatening Herrera with a knife.

## DISPOSITION

The August 8, 2024 order is affirmed.


                                        FEUER, J.

We concur:


        MARTINEZ, P. J.


        SEGAL, J.